ANTHONY D. CORONA *v.* FRANK ESPOSITO ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 3-6410-3590

Argued July 18—decided September 16, 1966

*Edward J. Gallagher,* of Danbury, for the appellants (defendants).

*Albert H. Hornig,* of Danbury, for the appellee (plaintiff).

DEARINGTON, J. The plaintiff sued to recover damages claimed to have resulted from the purchase of a secondhand 1959 Ford Galaxie automobile, which purchase, it is alleged, was induced by the fraudulent misrepresentations of the defendants to the effect that the car was in good condition and had been rebuilt and completely reconditioned. Believing such representations to be true, the plaintiff claims he bought the car, paying the defendant Esposito $1143.45. The plaintiff further alleged that the statements were false and known by Esposito or his agent Elbaum, the codefendant, to have been false when they were made. The defendants denied these allegations and by way of special defense

claimed that a "Retail Order" executed by the parties relieved the defendants of all liabilities. The trial court did not share in this view, judgment was rendered for the plaintiff, and the defendants appealed.

The court found that the plaintiff purchased the car for his son, a minor, sometime around March 19, 1964. The plaintiff signed a contract but did not read the sales paper because of language difficulty in that he did not understand English completely. He did not drive the car and had no knowledge of the mechanics of automobiles. He asked Elbaum about the car and was told that it was all right. The plaintiff or his son was told by Elbaum that the car was "in good condition," "a decent automobile," "had been rebuilt and reconditioned," and was "just like a new car." Elbaum knew or should have known that the car was not in the condition he represented it to be. Elbaum had been convicted of felonies and had served time in state prison. The plaintiff relied on Elbaum's representations and purchased the car. The sale was effected on the terms "Not guaranteed—Sold as is." The following day when the car was driven, it jumped all over the road, the gearshift did not function, the transmission was noisy, and the car overheated. A few days later the car was returned to Esposito, and although Esposito undertook some repairs, the car thereafter never functioned properly. Sometime later the points burned out, oil leaked from the gaskets, and the rear end went to pieces. Elbaum later told the plaintiff's son, "Sucker, now you are stuck with it." As a result, the car became valueless and was placed on blocks in the plaintiff's yard. At this time it had a trade-in value of $150 to $200. The court concluded that the essential elements of fraud had been proven and rendered judgment for $1000 in damages to the plaintiff.

These findings of ultimate facts include all the elements of actionable misrepresentations and support the judgment. *Sallies* v. *Johnson,* 85 Conn. 77, 82. Unless they can be overthrown, the judgment must stand. While the defendants have attacked the finding, they have failed to point out in their brief anything which would justify the corrections sought. Some of the requests which were denied refer to matters not important to the decision, while others sufficiently appear in the finding; the facts sought to be stricken are directly supported by some evidence or are logical inferences drawn by the trial court. *Fiala* v. *Connecticut Electric Service Co.,* 114 Conn. 172, 175. In reaching our conclusion that the finding is justified, we are not passing upon the credibility of the testimony or the weight of the evidence, both of which matters are within the province of the trial court. *Dezso* v. *Walye,* 113 Conn. 258, 262. "Our task is to say whether . . . [the] testimony is such that we must hold the action of the trial court in accepting it to be so unreasonable, illogical or illegal, that we are justified in setting aside the conclusions of fact which have been reached." *Fiala* v. *Connecticut Electric Service Co.,* supra, 177. We are unable so to hold. Several attacks on the finding, so far as material, will be considered hereafter.

The defendants question the finding as it relates to several of the essential elements necessary to sustain the action. A fraudulent representation must be made as a statement of fact and be knowingly untrue or made without belief in its truth or recklessly made for the purpose of inducing action upon it. *Sallies* v. *Johnson,* supra, 82. The representations made by Elbaum immediately before the car was purchased, relating to the condition of the car, could hardly be said to be other than factual representations. Elbaum's testimony that he had

no knowledge as to whether the car had been reconditioned when as a matter of fact he had made a positive representation to the contrary, taken together with other testimony by him, left the court with little choice other than to find that material false representations had been made to induce the sale. If a party, to secure some benefit to himself, makes an untrue statement about a matter of which he has, and is known to have, the best means of knowledge, he is guilty of fraud even if he spoke in ignorance of the facts, for he has asserted that he knows what he does not know. *Warman* v. *Delaney,* 148 Conn. 469, 473, 474. The defendants in this respect also argue that since the plaintiff's son had driven the car on several occasions prior to the sale, he should have reasonably been aware of its condition and that therefore the false representations lost their potency as inducements. This element of the action, however, is concerned solely with whether the material representations were false and made as an inducement of the contract. As Judge Swift so aptly stated in *Sherwood* v. *Salmon,* 5 Day 439, 448, "I apprehend no authority can be found to warrant the doctrine, that a man must use due diligence to prevent being defrauded, otherwise he shall be entitled to no remedy. The truth is, redress is most commonly wanted for injuries arising from frauds, which might have been prevented by due diligence. . . . In such impositions and deceits where common prudence may guard persons against the suffering from them, the offense is not indictable, but the party is left to his civil remedy for the redress of the injury that has been done him . . . ." See *Gallon* v. *Burns,* 92 Conn. 39, 42; *Ford* v. *H. W. Dubiskie & Co.,* 105 Conn. 572, 578. It matters not that the plaintiff or his son might have had an opportunity to have had the car examined

prior to the sale and ascertained the falsity of the representations. *Clark* v. *Haggard,* 141 Conn. 668, 673.

One of the defendants' assignments of error requires some consideration. The court found that the plaintiff signed a contract, "Retail Order for Motor Vehicle," but did not read the agreement because of language difficulty. The defendants unsuccessfully sought to strike this paragraph except as it related to the signing of the contract. The plaintiff testified that he read some English but "not too much. I do read a little bit, but I don't understand a lot of it." The document signed by the plaintiff contains a statement to the effect that the signer has read the terms and conditions on the back of the order and agrees to them and that the front and back of the order comprise the entire agreement. On the reverse side, printed in small letters, appear certain terms and conditions. One of the conditions provides that if the vehicle is a used one it is sold "as is" without warranty unless a used-car warranty appears on the front of the document under the word "Remarks." After the word "Remarks" on the front of the document there appears a blank space. The defendants argue that this evidence relieves them of any liability in respect to any representations made in connection with the condition of the car. "The general rule is that where a person of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it and notice of its contents will be imputed to him if he negligently fails to do so; but this rule is subject to qualifications, including intervention of fraud or artifice, or mistake not due to negligence, and applies only if nothing has been said or done to mislead the person sought to be charged or to put a man of reasonable business prudence off

his guard in the matter." *Ursini* v. *Goldman,* 118
Conn. 554, 562; see *Batter Building Materials Co.*
v. *Kirschner,* 142 Conn. 1, 7. The determination
whether the plaintiff under all circumstances was
chargeable with want of diligence in not informing
himself as to the contents of the contract so as to
charge him with knowledge thereof was within the
discretion of the trial court and will not be dis-
turbed by this court unless the discretion was
abused. Under all the surrounding circumstances
here prevailing, we cannot say that the trial court's
discretion was abused in this instance.

The remaining question relates to the proof of
the amount of damages sustained by the plaintiff
by reason of the fraudulent representations. The
settled rule in this state makes the measure of such
damages "the difference between the actual value
of the property received and its value had it been
as represented, with any consequential damages
resulting directly from the fraud." *Morrell* v.
*Wiley,* 119 Conn. 578, 583; *Clark* v. *Haggard,* supra.
The trial court found this difference to be $1000.
This finding was based on the testimony of a witness
called by the plaintiff as an expert on the value of
such a car; his qualifications as such do not appear
to be questioned. This witness gave as his opinion
that the car at the time he examined it in the spring
of 1964 was not worth much—"I guess $300 or
$400." The value of the car at the time of sale was
represented by the cost price of $1143.45. The court
could accept this figure as fixing the value the car
would have had if it had been as represented. *Mor-
rell* v. *Wiley,* supra, 585. The court found that the
actual value of the car was $150. The court was not
bound by the expert's opinion. *Clark* v. *Haggard,*
supra, 674. The value of property in many instances
is a matter of estimate. *Ford* v. *H. W. Dubiskie &
Co.,* supra, 580. In cases of this nature damages can-

not be computed by mathematical calculation, and the law furnishes no precise or definite rule for their assessment, which is within the province of the court. *Knight* v. *Continental Automobile Mfg. Co.,* 82 Conn. 291, 293. "To overthrow the award of damages when assessed by a judge, the defendant must show that it was so excessive as to be one that the trial court could not reasonably make." *Squires* v. *Reynolds,* 125 Conn. 366, 369. We cannot say that the damages awarded in this case require interference by this court.

There is no error.

In this opinion PRUYN and KOSICKI, Js., concurred.