FIRST CHARTER NATIONAL BANK *v.*
ROBERT A. ROSS ET AL.
(11063)

DALY, LAVERY and CRETELLA, Js.

Argued October 2—decision released December 15, 1992

*Michael S. McKenna,* for the appellant-appellee (plaintiff).

*Richard L. Newman,* for the appellee-appellant (defendant Ann Ross).

DALY, J. The plaintiff appeals from the trial court's judgment rendered in favor of the defendant Ann D. Ross, who has filed a cross appeal.[1] The plaintiff claims that the trial court improperly (1) permitted the defendant to invoke fraud as a defense, (2) found an agency relationship between the defendant's husband and the plaintiff, and (3) imputed the fraud of the defendant's husband to the plaintiff. In her cross appeal, the defendant claims that the trial court improperly failed (1) to join the Small Business Administration as a necessary party, (2) to permit her to amend her special defenses, and (3) to award the proper damages and interest against the named defendant.

The factual background is as follows. On July 5, 1979, the Rosses executed a guarantee for a $250,000 loan to be made by the Concord National Bank (Concord) to Midland Textile Corporation (Midland) of North Carolina. The guarantee was secured by a mortgage on their property located at Candlewood Isle in New Fairfield.

---

[1] On July 31, 1987, a default judgment was rendered against Robert A. Ross, the named defendant, for failure to appear. The defendants had been married but were divorced in 1981, and Robert A. Ross quitclaimed his interest in the premises to Ann D. Ross to whom we shall refer as the defendant.

While the defendant was entertaining guests on the dock of the Candlewood Isle house, her husband, Robert A. Ross, approached the defendant and presented her with papers to sign. The defendant inquired as to whether the documents involved the Candlewood Isle house and explained that if they did she would refuse to sign them. Her husband responded in the negative. Relying on her husband's assurances, the defendant signed the documents. The documents were, in fact, the guarantee and the mortgage deed to the Candlewood Isle house. Concord had no contact with the defendant before granting the loan. It customarily relied on its borrowers to produce all the necessary documents required by the loan commitment. As such, Concord was relying on Robert Ross to produce the proper documentation.

On July 11, 1979, Robert Ross, acting in his capacity as president of financially troubled Midland, executed a promissory note for $250,000 to Concord in return for the loan to Midland. Concord assigned its interest in the note to the Small Business Administration which guaranteed 85 percent of the note in the event of a default. The Small Business Administration subsequently assigned its interest back to Concord on December 19, 1983.

The plaintiff, as Concord's successor,[2] instituted this action seeking foreclosure of the mortgage on February 18, 1987. On September 12, 1990, the defendant filed an amended answer and ten special defenses, two of which alleged fraud by the plaintiff. The defendant claimed that she did not knowingly or willingly execute a mortgage deed and that the mortgage was a result of fraud, deceit or misrepresentation.

---

[2] On October 16, 1984, Concord National Bank consolidated its banking operations with Citizens National Bank to form the plaintiff First Charter National Bank.

The trial court rendered its decision, which was based on the defendant's fifth special defense, finding that the mortgage and guarantee were obtained by fraud on the part of the plaintiff acting in concert with Robert Ross and Midland. The trial court held that Robert Ross had acted fraudulently. It also held that his fraud was imputed to the plaintiff because he was the agent of the plaintiff. The trial court determined an agency relationship existed because the guarantee and the mortgage were for the benefit of the plaintiff and because the plaintiff relied on the husband to obtain the defendant's signature.

The trial court rendered judgment in favor of the defendant and in favor of the plaintiff against Robert Ross in the amount of $250,000 plus interest of $373,750 and attorney's fees of $18,000 and ordered foreclosure by sale of Robert Ross' interest in the mortgaged premises. The plaintiff appealed and the defendant cross appealed.

I

The plaintiff first claims that the trial court improperly permitted the defendant to assert fraud as a special defense to the foreclosure action. "The essential elements of an action in fraud . . . are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury. *Miller* v. *Appleby,* [183 Conn. 51, 54–55, 438 A.2d 811 (1981)]. A claim of fraud must be proven by clear and satisfactory evidence. Id., 55." (Internal quotation marks omitted.) *Regis* v. *Connecticut Real Estate Investors Balanced Fund, Inc.,* 28 Conn. App. 760, 768, 613 A.2d 321 (1992). Whether the evidence supports the defendant's claim of fraud is a question of fact. Id., citing *J. Frederick Scholes Agency* v. *Mitchell,* 191

Conn. 353, 358, 464 A.2d 795 (1983); *Miller* v. *Appleby,* supra, 55. The plaintiff argues that the defendant may not assert a defense of fraud because she negligently failed to read the papers that she signed at her husband's request. We disagree.

"The general rule is that where a person of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is [that person's] duty to read it and notice of its contents will be imputed to [that person] if [that person] negligently fails to do so; but this rule is subject to qualifications, including intervention of fraud or artifice, or mistake not due to negligence, and applies only if nothing has been said or done to mislead the person sought to be charged or to put a [person] of reasonable business prudence off . . . guard in the matter." *Ursini* v. *Goldman,* 118 Conn. 554, 562, 173 A. 789 (1934); see also *King* v. *Industrial Bank of Washington,* 474 A.2d 151, 155 (D.C. App. 1984).

It is within the trial court's discretion to determine whether, under the circumstances, the defendant was not diligent in trying to read the documents she signed and whether to charge her with knowledge of their contents. *Corona* v. *Esposito,* 4 Conn. Cir. Ct. 296, 302, 230 A.2d 624 (1966). Unless the trial court abused its discretion, we will not disturb this determination. Id.

Robert Ross presented the guarantee and mortgage to the defendant with the signature pages on top, thereby discouraging the defendant from looking at the contents of the documents. He asked her to sign the documents and, in response to her inquiry, assured her that they had nothing to do with the house. She was entertaining company on the dock at the house when her husband approached her. Given these circumstances, we cannot say that the trial court abused its discretion.

## II

The plaintiff's remaining claims challenge the trial court's determination that Robert Ross acted as the plaintiff's agent and, as such, his actions should be imputed to the plaintiff. Generally, a person's fraud in inducing his or her spouse to execute a mortgage does not "invalidate it as against the mortgagee unless the mortgagee in some way participated in or knew of the fraud." *Lesser* v. *Strubbe,* 67 N.J. Super. 537, 545, 171 A.2d 114, aff'd, 39 N.J. 90, 187 A.2d 705 (1961). Here, the trial court imputed the fraudulent misrepresentations of the defendant's husband to the plaintiff after finding that an agency relationship existed between them because the plaintiff "relied entirely upon Mr. Ross to obtain Ms. Ross's signature on the guarantee and mortgage deed securing said guarantee."

"Agency is defined as the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act . . . . Restatement (Second), 1 Agency § 1. *McLaughlin* v. *Chicken Delight, Inc.,* 164 Conn. 317, 322, 321 A.2d 456 (1973). Thus, the three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. Restatement (Second), 1 Agency § 1, comment b (1958). *Botticello* v. *Stefanovicz,* 177 Conn. 22, 25, 411 A.2d 16 (1979); see also *Long* v. *Schull,* 184 Conn. 252, 256, 439 A.2d 975 (1981). The existence of an agency relationship is a question of fact. *Botticello* v. *Stefanovicz,* supra, 26; *Conte* v. *Dwan Lincoln-Mercury, Inc.,* 172 Conn. 112, 124, 374 A.2d 144 (1976)." (Internal quotation marks omitted.) *Becken-*

*stein* v. *Potter & Carrier, Inc.,* 191 Conn. 120, 132–33, 464 A.2d 6 (1983). Therefore, the trial court's decision will be reversed only if it is clearly erroneous and not supported by the evidence. *Rosenblit* v. *Danaher,* 206 Conn. 125, 146, 537 A.2d 145 (1988). "Some of the factors listed by the Second Restatement of Agency in assessing whether such a relationship exists include: whether the alleged principal has the right to direct and control the work of the agent; whether the agent is engaged in a distinct occupation; whether the principal or the agent supplies the instrumentalities, tools, and the place of work; and the method of paying the agent. . . . In addition, [a]n essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal. . . . Finally, the labels used by the parties in referring to their relationship are not determinative; rather, a court must look to the operative terms of their agreement or understanding." (Citations omitted; internal quotation marks omitted.) *Beckenstein* v. *Potter & Carrier, Inc.,* supra, 133–34.

The existence of an agency relationship must be proven by a fair preponderance of the evidence. *Leary* v. *Johnson,* 159 Conn. 101, 105, 267 A.2d 658 (1970); *Munson* v. *United Technologies Corporation,* 28 Conn. App. 184, 188, 609 A.2d 1066 (1992). We find that such a relationship was not supported by the evidence of this case. There is no evidence in the record indicating that the plaintiff directed and controlled Robert Ross' actions to obtain the necessary documents for the loan. The plaintiff did not compensate Robert Ross for obtaining the appropriate signatures. Moreover, the loan itself was made not for the benefit of the bank but for the benefit of Robert Ross' corporation. Therefore, the trial court could not have properly determined that an agency relationship existed. Nor could it have properly imputed the knowledge of the fraud to the plaintiff.

## III

Turning to the defendant's cross appeal, we will consider whether the defendant was aggrieved by the trial court's decision. Because this issue implicates the subject matter jurisdiction of this court, we may raise it sua sponte. "Any appellee . . . aggrieved by the judgment or decision from which the appellant has appealed may jointly or severally file a cross appeal within ten days from the filing of the appeal." Practice Book § 4005. The test for demonstrating aggrievement is well settled: "First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." *Winchester Woods Associates* v. *Planning & Zoning Commission,* 219 Conn. 303, 307, 592 A.2d 953 (1991).

The defendant has brought this cross appeal to challenge the trial court's judgment rendered in her favor. The trial court rendered a default judgment against her former husband and ordered that only his interest in the Candlewood Isle property be foreclosed. Because the defendant prevailed in the trial court, she has not been injured by the trial court's judgment notwithstanding that she now owns that half of the property against which a judgment of foreclosure has entered. See *Bartlett* v. *Administrator,* 142 Conn. 497, 509, 115 A.2d 671 (1955); *McNeil* v. *Tyson,* 37 Conn. Sup. 624, 432 A.2d 328 (1981). She obtained that one-half interest by quitclaim deed; see footnote 1, supra; subject to the existing mortgage. Thus, the defendant is not

aggrieved by the trial court's judgment and her cross appeal must be dismissed.

The judgment is reversed and the case is remanded for a new trial. The cross appeal is dismissed.

In this opinion the other judges concurred.