[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Dime Savings Bank of New York, FSB (Dime), sued the defendant, Frances E. Cervasio, to collect the balance due on an adjustable rate promissory note executed by the defendant on June 12, 1987, in the principal amount of $178,500. The plaintiff claims that the note, which was payable in monthly installments, has been in CT Page 5949 default since the defendant failed to pay the installment due on September 1, 1987, and that in addition the Dime is entitled under the terms of the note to be reimbursed for attorney's fees and costs of collection. The defendant Cervasio filed an answer admitting that she had executed the note and had not made the required payments. The defendant also filed ten special defenses alleging that (1) she never received the proceeds of the note; (2) she never authorized the Dime to distribute the proceeds to anyone other than herself; (3) the Dime distributed the proceeds of the loan in an unauthorized manner; (4) she lacked the mental capacity to understand the loan documents; (5) she lacked the mental capacity to understand the nature of the note; (6) she did not execute the note freely but only under duress; (7) the Dime was negligent in failing to meet with the plaintiff prior to the closing because such a meeting would have disclosed both her lack of mental capacity to understand her obligations under the note and certain errors in the loan application; (8) the loan was unconscionable and unenforceable; (9) the Dime violated the Truth in Lending Act, 15 U.S.C. § 1635, by failing to advise the defendant of her right to rescission; and (10) the plaintiff violated 1601 et seq. of the above federal statute by failing to give defendant certain required notices and disclosures.
The case was referred to Attorney Howard C. Kaplan, an attorney trial referee, in accordance with General Statutes 52-434 (a) and Practice Book 428 et seq. The referee conducted a trial and then filed his report containing a number of findings of fact. He found that (1) the defendant Cervasio executed the note in question, had the mental capacity to know what she was doing, and did not do so under duress; (2) the defendant was represented at the closing by competent counsel, an Attorney Brian Rosenfeld; (3) at the time of the closing, Mrs. Cervasio authorized the proceeds of the loan to be used to pay off an existing mortgage on her cooperative apartment, and the balance to be distributed to her husband, her son-in-law, Karl Wiemer, and their business partner, James Licata, all of whom were involved in a real estate partnership known as 50 Church Street Associates Limited Partnership (50 Church Street); (4) the defendant signed the loan application, although it was prepared by someone else and contained a number of misstatements; (5) although no officer of the Dime verified the information in the application or counseled Mrs. Cervasio, the bank did not participate in any fraud or overreaching that may have occurred; (6) there were no violations of the Truth in Lending laws because defendant received all the documents she was entitled to obtain, and it was irrelevant that the cancellation notice was apparently signed on June 12, 1987, the date of the closing, rather than on the date indicated on the notice, which was June 18, 1987, CT Page 5950 the date the funds were disbursed, because the defendant never attempted to rescind the transaction and the plaintiff did not perform any act within the three day waiting period after the closing.
The attorney trial referee concluded that (1) the defendant, who was seventy-seven years of age at the time of the closing, signed the promissory note in question and had the mental capacity to know what she was doing; (2) the proceeds of the loan were disbursed either directly for the benefit of Mrs. Cervasio, or in accordance with her instructions; (3) the defendant had not proved any of her special defenses, including her alleged lack of mental capacity; and (4) judgment should enter for the plaintiff for a total of $297,497.09, which includes interest at 13.875% to the date of trial, June 4, 1992.
Pursuant to Practice Book 438, the defendant Cervasio moved to correct the report. She contended that the findings of fact should be amended in some twenty-nine different ways including that (1) Mrs. Cervasio at the time of the closing was "elderly and physically infirm," with very bad eyesight which made it "physically impossible" for her to read the loan documents; (2) no one at the closing, including her own personal attorney or Dime's attorney, explained the "legal significance" of the various loan documents to her, and Mrs. Cervasio did not understand that she was borrowing money that had to be repaid; (3) Licata prepared me loan application and Dime's officers knew that the application was made out by Licata, and therefore Licata was an "agent" of Dime, and both Licata and Dime "participated in the wrongdoing which led to the loan"; (4) Mrs. Cervasio thought that her husband's real estate enterprise, 50 Church Street, was "obligated to repay the loan", and the defendant did not realize that she herself was borrowing money from the bank; and (5) the Truth in Lending Law was violated because the defendant was not given a copy of the notice regarding the right to cancel the transaction.
The referee declined to make any corrections in his report except he did agree that Mrs. Cervasio was not involved with her husband's enterprise, 50 Church Street. He also added to one of his findings that the defendant was elderly and physically infirm with visual and hearing impairments, and that she did not read the loan documents and that her attorney did not read these documents aloud to her at the closing. The referee reaffirmed, however, his conclusion that the defendant "had the mental capacity to understand the loan documents."
The defendant Cervasio then filed exceptions to the report; Practice Book 439; and annexed thereto the required transcript. The exceptions contend that (1) the referee's report should have been amended to CT Page 5951 reflect that the Dime's attorney did not explain the significance of the loan documents to the defendant; (2) Mrs. Cervasio did not understand that she was borrowing money from the plaintiff, but believed that her husband's business enterprise, 50 Church Street, was obligated to repay the note; and (3) Dime's officer, a Mr. Ken Levine, misrepresented that he had accepted Mrs. Cervasio's loan application only after interviewing her, which was not true.
This court's authority in reviewing an attorney trial referee's recommendations as to the facts of a given case is a limited one. As our Supreme Court held in Dills v. Enfield, 210 Conn. 705, 714,557 A.2d 517 (1989): (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear"; and (3) a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. Also, Wilcox Trucking, Inc. v. Mansour Builders, Inc., 20 Conn. App. 420,425, 567 A.2d 1250 (1989), notes that "[i]n a contract action, findings of fact should be overturned only when they are clearly erroneous.
According to Bernard v. Gershman, 18 Conn. App. 652, 656,559 A.2d 1171 (1989), this court's task is to determine whether the conclusions of fact and law "are legally and logically correct and whether they find support in the facts found by the referee." Practice Book 440. This procedure appears to be similar to that employed by an appellate court in reviewing a decision of the trial court. "On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . ." (internal quotation marks and citations omitted.) Fortier v. Newington Group, Inc., 30 Conn. App. 505, 509, 620 A.2d 1321 (1993).
Therefore, the first issue is whether the referee's factual findings are supported by the record. The defendant does not deny that she executed the note in question, but contends that her mental capacity was insufficient to comprehend that she was obligating herself to CT Page 5952 repay the loan. Mrs. Cervasio agreed at the trial that at the time of the transaction in question, she was not taking any medication or treatment for mental problems, nor had a conservator been applied for or appointed on her behalf.[1] Moreover, the defendant paid an installment on the loan in question, as well as certain fees due the bank, and she also paid Attorney Rosenfeld's legal fees. Her attorney testified that he believed the defendant understood she was executing a promissory note.[2] Mr. Rosenfeld also testified that he reviewed with her the authorization to disburse the funds from the closing.[3]
As the Appellate Court noted in Citytrust v. Page, 28 Conn. App. 907,908, 610 A.2d 197 (1992), "[a]lthough much of the trial testimony was disputed, the credibility of witnesses, the findings, of facts and the drawing of inferences are all within the province of the trier of fact. . . . It is futile to assign error involving the weight of testimony or the credibility of witnesses. . . . This court can neither retry the facts in order to make our own findings nor pass on the credibility of witnesses . . . but can only review such findings to determine whether they could legally, logically and reasonably be found thereby establishing that the trial court could reasonably conclude as it did." (internal quotation marks and citations omitted.) In reviewing the motion to correct and exceptions, one senses that the defendant is attempting to substitute her own version of the facts for those found by the referee, a practice which was discountenanced in Argentis v. Gould, 23 Conn. App. 9, 19, 579 A.2d 1078 (1990).
Cervasio also filed objections to the acceptance of the report. Practice Book 440. She contends that (1) Licata received the bulk of the loan proceeds, contrary to the referee's finding that the money was used to pay off a mortgage on her apartment unit, or as she otherwise authorized; (2) she lacked the mental capacity to understand the nature of the loan documents she was signing, particularly because of her cataract condition; (3) Dime defrauded the defendant and breached its duty of good faith and fair dealing by not explaining to her the nature of the documents she signed at the closing; (4) Licata's fraud should be imputed to the Dime because he worked closely with the plaintiff's loan officer, Mr. Levine; (5) the loan was "unconscionable" under the circumstances, including defendant's inability to understand the nature of the me circumstances, including defendant's inability to understand the nature of the transaction; and (6) the rescission notice was improper and invalidated the transaction in question.
Accordingly, the next issue is whether the referee's conclusion that Mrs. Cervasio is obligated to repay this loan follows logically and legally from his factual findings. The conclusion was based on the CT Page 5953 finding that the defendant had the requisite mental capacity to understand the transaction in question and was represented at the closing by competent counsel, and that the plaintiff was not involved in any fraud perpetrated on the defendant. At the trial, Mrs. Cervasio testified that she was "forced" to sign the mortgage papers by her lawyer, Mr. Rosenfeld, but agreed that no one from the Dime was involved in any such conduct.[4] The plaintiff had its own attorney at the closing and Mr. Rosenfeld represented the defendant.
Moreover, in addition to signing the promissory note, the defendant signed the application to the Dime for the loan, as well as the cancellation notice, the Truth in Lending Disclosure Statement, and an "Agreement" dated June 18, 1987, authorizing the allocation of the proceeds of the loan.[5]
The defendant argues that Licata was an "agent" of the plaintiff and that his conduct must be attributed to the plaintiff. A similar contention was rejected in First Charter National Bank v. Ross,29 Conn. App. 667, 672, 617 A.2d 909 (1992), on the theory that the defendant had not proved that the mortgagee "participated in or knew of the fraud." The court reviewed the principles of agency, and noted that "an essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal. . . ." As said in Charter National Bank, "there is no evidence in the record indicating that the plaintiff directed and controlled Robert Ross' actions to obtain the necessary documents for the loan. The plaintiff did not compensate Robert Ross for obtaining the appropriate signatures. Moreover, the loan itself was made not for the benefit of the bank but for the benefit of Robert Ross' corporation." Id., 673. If one were to substitute James Licata for Robert Ross, the same result logically should follow in this case as well.
After reading the transcript I, am convinced that Frances Cervasio was victimized by Licata, perhaps aided and abetted by Wiemer. The role of her husband, Dr. James Cervasio, in this scheme remains obscure in my mind. Furthermore, I believe that her lawyer may well have failed to adequately represent her, noting in this regard that he had represented Licata and 50 Church Street prior to representing Mrs. Cervasio, and that it was Licata who arranged for Attorney Rosenfeld to represent the defendant in this transaction. An elderly woman with various and sundry physical problems was victimized without any doubt, and ended up with $280.62 cash from the closing, plus a large debt to the Dime that she is unable to pay. of course, the partnership, plus Licata and Wiemer individually, agreed to be responsible for payment of the Dime loan, but the principals in this transaction, including CT Page 5954 Attorney Rosenfeld, knew full well that the partnership was having financial problems at the very time it entered into the indemnity agreement. The indemnity agreement was, as one would suspect, never implemented.
I am also equally convinced that the defendant did not prove her special defense that the Dime is responsible for what occurred. Based on the standard of review in Dills v. Enfield, supra, I could not determine or find that the attorney trial referee's conclusion that the loan from the plaintiff should be repaid by the defendant Cervasio was unwarranted, illegal or illogical. On the contrary, I believe that, in the words of Practice Book 440, his recommendation was "properly reached on the basis of the subordinate facts found." Thus, no material error in the referee's report has been found, or any other sufficient reason why it is unacceptable. Practice Book 443.
Judgment is entered in accordance with the report of the attorney trial referee in favor of the plaintiff to recover from the defendant Cervasio the sum of $297,497.09, plus interest at 13.875%, from June 5, 1992 to the date of this judgment, plus attorney's fees and disbursements of $9,675.15, as recommended by the attorney trial referee.
Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 16th day of June, 1993.
William B. Lewis, Judge