[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an acting that was tried before this court on April 8, 1998 and April 9, 1998. Following trial the parties submitted briefs and reply briefs on or before May 22, 1998. Unfortunately, this court was not available until June due to illness, and upon its return, ordered a transcript of the two day trial. The transcript was provided to the court in the middle of July, 1998.
The plaintiff instituted this action by complaint served on November 29, 1996 in which it is attempting to enforce against the defendants payment of a promissory note (hereafter the "note") dated August 31, 1990 in the original principal amount of $121,666.67 in favor of Summit National Bank of Torrington, Connecticut (hereafter "Summit"). Plaintiff claims Summit was placed into receivership by the Federal Deposit Insurance Corporation (hereafter "FDIC") and subsequently the FDIC sold the note to the plaintiff in January, 1996 on part of a bulk sale. The book value shown on the bill of sale is $120,221.05. The defendants' defenses are that the FDIC did not sell this note to the plaintiff and, therefore, the plaintiff is not the owner or holder of the note and that there was a lack of consideration to the defendants for their executing the note. On the claim of lack of ownership, defendants filed a motion to dismiss on April 2, 1998, six days before commencement of trial. The court reserved decision on that until the close of evidence and the filing of briefs.
The court bases its decision on the credibility of the witnesses, their demeanor on the witness stand, the manner in which they responded to questions, their memory and lack of memory, the consistency and inconsistency of their claims and testimony, and their interests in the outcome of this case as well as the credibility and probative value of the exhibits in this matter. From the totality of the evidence, the court finds as follows:
1. OWNERSHIP OF THE NOTE:
 a. The note: The court accepts the last note affidavit (Exh. 1) and finds the note attached thereto to be a copy of the original note. CT Page 9599
 b. The bill of sale: Attached to the bill of sale to the plaintiff (Exh. 2) is a list of the notes being assigned. It contains the name of defendant, John M. Walsh, the same book value of $120,221.05, (the principal balance due) as shown in the records of the FDIC, Exh. 4, which exhibit also shows the FDIC's same Lamis number 279871, as is on Exhibit A to the bill of sale. Exhibit 4 also shows the maturity date of the loan as 9/01/1995, which matches the maturity date of the note, September 1, 1995. Exhibit 4 and Exhibit to the bill of sale also have the same bank number, 3957, and Mr. Leal of the FDIC testified that 3957 was the number assigned to Summit National Bank. His testimony was not contested. Exhibit 4 and 6 from the FDIC records also have the same original loan amount as on the note $121,666.67, the same maturity date of 9/01/1995; the same interest rate of 12%, and the same monthly payment of $1,297.47 as appear on the note. They also have the same interest rate and principal balance or book value that appeared on the bill of sale.
The discrepancy on the bill of sale, exhibit is that the original date of the note is listed as 10/21/88 and the original amount of the note is listed as $284,000. However, this discrepancy has proven to be a clerical error by Mr. Leal's testimony in which he produced a different note from the FDIC files dated 10/21/88 in the original principal amount of 284,000 signed by the defendant, Martin J. Walsh and guaranteed by the defendant. John M. Walsh. Mr. Leal further testified that Exhibit 4 as to the note subject of this action shows that is was sold, and Exhibit 8 which is an FDIC loan history of the $284,000 note does not show that it was sold or transferred, and it is still owned by the FDIC. There is additional evidence, but suffice it to say that this court finds by a preponderance of the evidence that there is sufficient indicia of ownership of the note by the plaintiff and that the note subject of this action was sold to the plaintiff by the FDIC by the bill of sale which is Exhibit 1.[1]
Accordingly, the motion to dismiss is denied.
 2. WAS THERE A LACK OF CONSIDERATION FOR THE NOTE AND/OR WAS IT INDUCED BY FRAUD IN THE FACTUM?
The court bases its decision on this issue upon the credibility of the defendants' testimony which includes their demeanor on the witness stand, the consistency of their testimony and their ability to remember. The court found the defendants to be honest and their testimony credible. The court also bases its decision on the credibility of the, exhibits including the CT Page 9600 exhibits offered as well as the lack of exhibits offered. From the totality of the evidence, the court finds as follows:
First, the court admitted plaintiff's exhibit 11 subject to a Motion to Strike after the court sees the briefs. Trial transcript, 4/9/98, page 107. The court finds that this credit memo (Exh. 11) does not meet the business exception to the heresay rule. The court finds that it is not reliable as a business record and grants the Motion to Strike.
The defendants claim that there was a lack of consideration for the note, no monies were paid to them, but that they were led to believe by Raymond Cordani, President of Summit Bank, that they were merely adding to the collateral for, an existing loan, a one hundred thousand dollar unsecured note with Summit of Construction Services of Bristol, Inc., a corporation owned by John Walsh. The evidence shows that John Walsh turned over to Summit as collateral 106 shares of stock on August 17, 1990,14 days before the execution of the note and deed on August 31, 1990. See Defendants' Exhibit A and testimony of John Walsh, TT, April 18, 1998, pages 90-91. Later, on August 31, at the request of Mr. Cordani, additional collateral was provided by the defendants, namely a second mortgage on the Mid Cross Construction Building owned by John Walsh and a second mortgage given by Martin Walsh on his property at 324 Red Stone Hill Road, Bristol, (TT, April 9, 1998, pages 92-93), both mortgages listed as collateral on the August 31, 1990 note. The court finds the testimony of the defendants credible.
It is true that the August 31, 1990 note for $121,666.67 at 12% interest was signed by the defendants and should not have been if the documents were simply those evidencing additional collateral. Further, plaintiffs exhibit 10 is a letter dated August 31, 1990 to Summit signed by the defendants acknowledging that they executed the note and that all of the funds received were going to be used for business or commercial purposes.
However, offsetting that evidence is the following:
a) The defendants never applied for a loan of $121,666.67.
b) There was no commitment letter from Summit for this alleged loan.
c) There was no disclosure of costs, closing fees, etc. CT Page 9601
d) There was no settlement or disbursement statement.
 e) They closing took fifteen minutes and was held at Community Savings Bank in Bristol by Mr. Cordani, the President of Summit instead of at Summit in Torrington.
 f) There is no evidence that the $121.666.67 was ever paid to or for the benefit of the defendants. Exhibit 11, which was stricken, merely shows how the money was to be disbursed, and is not conclusive as to whether it was disbursed even if it had been admitted as an exhibit.
 g) Neither the plaintiff nor the FDIC was able to produce canceled checks or copies thereof showing payments to either defendant or payments on existing notes. There was no check for the amount of the note endorsed back to the bank.
 h) Further, the files on the other Summit loans, which should have been in the possession of the FDIC, were not produced. These files would normally show the credits to the other loans from the proceeds of the $121,667.67 loan. In sum, neither the plaintiff nor the FDIC were able that there was, in fact, disbursement of the alleged proceeds of the alleged "note".
i) Neither of the defendants were represented by counsel.
 j) The defendants received no documentation regarding the alleged loan transaction.
 k) The printout allegedly evidencing the transaction breakdown of this "loan", Exhibit 3, does call for payments of $1,297.47. However, the remainder of the printout makes no sense. The principal advanced is listed as $121,220.05 (not $121.666.67, the amount of the note) made on March 1, 1991, 6 months after the date of the note with the first payment not made until April 3, 1991. Why would disbursement and payment on the loan be delayed six to seven months? There is no indication of prior payments and the printout covers the period of December 31, 1987 to July 3, 1992.
 l) The evidence leaves too many unanswered, relevant questions and is filled with inconsistencies.
The court recognizes that banks that fail do so for a reason, one of which may be sloppy record keeping. However, there is a burden upon the plaintiff to prove that the funds of the alleged CT Page 9602 loan were disbursed to or for the benefit of the defendants. The plaintiff has not sustained its burden in this regard. Since there is no proof of disbursement/payment to or on behalf of the defendants, there was no loan, and the note is, therefore, void. It may well be that lack of consideration is not a defense available under the D'oench Duhme doctrine. However, fraud in the factum is, and therefore, renders the note void.
The court concludes that there is clear and convincing evidence that the note was procured by fraud in the factum. Mr. Cordani told the defendants that they were merely signing to put up additional collateral when in fact he knew that was false. Therefore, the signatures on the note were induced by fraud. "The essential elements of . . . fraud . . . are:
1) That a false representation was made as a statement of fact (Mr. Cordani's false representation was that the papers to be signed were merely additional security for existing loans.)
2) That it was untrue and known to be untrue by the party making it. (It is obvious that the representation was untrue and Mr. Cordani knew it to be untrue).
3) That it was made to induce the other party to act on it. (The evidence clearly shows that the misrepresentation was made to induce the defendants to sign the papers including the promissory note.)
4) That the latter (the defendants herein) did so act on it to his injury. (The defendants have been sued on the note.) Miller v. Appleby, 183 Conn. 51, 54-55 (1981).
3. THE D'OENCH DUHME DOCTRINE AND 12 U.S.C. § 1823 (e)
This doctrine and statute relieves the FDIC and its assignee from certain defenses such as agreements between a bank and a customer which tend to diminish or defeat the interest of the FDIC in any asset acquired by it in a situation as in the case at bar (taking over a failed bank). It is to prevent the FDIC from being subject to secret agreements.
However, a note procured by fraud in the factum is rendered completely void, in which case it is not barred by D'oenchDuhme and Sec. 1823(e). Fraud in the factum is the "sort of fraud that procures a party's signature to an instrument without CT Page 9603 knowledge of its true nature or contents." Langley v.FDIC, 484 U.S. 86, 93 (1987). Fraud in the factum renders the note entirely void, thus leaving no right, title or interest of the FDIC that could be diminished and defective. Langleyv. FDIC, supra. In re 604 Columbus Ave. RealtyTrust, 968 F.2d 1332, 1346 (1st Cir. 1992). Garrett v.Commonwealth Mortgage Corp. of America, 938 F.2d 591, 595
(5th Cir. 1991).
"It seems best to adopt as a common-law definition of fraud in the factum . . . the codification of the common-law definition in the Uniform Commercial Code, General Statutes 42a-3-305 (2) (c), which is: `[S]uch misrepresentation as has induced the party to sign the instrument neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms'" Heating Acceptance Corp. v. Patterson,152 Conn. 467. 473-74 208 A.2d 341 (1965).
"The general rule is that where a person of mature years and who can read and write. signs or accepts a formal written contract affecting his pecuniary interests. it is [that person's] duty to read it and notice of its contents will be imputed to [that person] if he negligently fails to do so; but thisrule is subject to qualifications, including intervention offraud or artifice, or mistake not due to negligence,and applies only if nothing has been said or done to misleadthe person sought to be charged or to put a [person] ofreasonable business prudence off . . . guard in the matter."
(Internal quotation marks omitted.) First Charter National Bank v. Ross, 29 Conn. App. 667, 671, 617 A.2d 909 (1992), appeal dismissed, 228 Conn. 203, 635 A.2d 796 (1994).
The court finds, under the circumstances of this case, from the totality of the evidence. that fraud in the factum did take place. The defendants were subjected to misrepresentations of Mr. Cordani, thereby being induced to sign the note without knowledge of its true nature or contents. Further, the defendants were without counsel and in a fifteen minute "closing" were under pressure by Mr. Cordani to sign. Therefore. they did not have a reasonable opportunity to obtain knowledge of the character of the document they signed.
For all of the above reasons the court finds from the totality of the evidence that the subject note is void. Accordingly judgment is entered for the defendants.[2]
CT Page 9604
Rittenband, J.