Edward L. McCALL, Plaintiff,

v.

CITY OF DANBURY, Danbury Police Department, Alexander Williams, Julio Lopez, Daniel Casagrande, Constance Shuler, Samuel Deibler, Jose Agosto, Linda Lorenco, Joseph Monroe and Robert Paquette, Defendants.

No. Civ. 399CV00968 (PCD).

United States District Court,
D. Connecticut.

Aug. 21, 2000.

Jerry V. Leaphart, Jerry V. Leaphart & Associates, Danbury, CT, for Plaintiff.

James M. Sconzo, Wendi L. Boyden, Halloran & Sage, Hartford, CT, for Defendants.

*RULING ON MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT*

DORSEY, Senior District Judge.

Plaintiff alleges violations of 42 U.S.C. §§ 1981, 1983, 1985 and 2000e ("Title VII"); fraudulent misrepresentation; neg-ligent and intentional infliction of emotional distress; and estoppel of defendants' refusal to comply with alleged promises. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343 and pendent jurisdiction. Defendants move to dismiss or, in the alternative, for summary judgment on all counts.

## I. BACKGROUND

The City ("Danbury") conducted a civil service examination ("the written exam") to fill eleven police vacancies in March 1996. Candidates receiving passing scores were ranked on an eligibility list according to their final scores, which were calculated by adding to passing scores mandatory preference points for veteran's and/or special officer status. *See* CONN.GEN.STAT. § 7–415; DANBURY, CONN., CODE § 15–17. Plaintiff, an African–American, received a passing score of 92 on the written exam. Plaintiff received no preference points.

The job announcement stated that those passing the written exam would be tested physically, psychologically and by polygraph and checked for background. Danbury tested only the top 47 eligible candidates, those with final scores of 95 or higher, as having a realistic possibility of appointment.[1] Two of the 47 were white candidates with lower written test scores but higher final scores than plaintiff's after preference points were added.

In May 1996, Danbury hired eleven police officers from the 47 candidates advanced to further testing. In 1998, Danbury, moving down the eligibility list, appointed a white male whose final score was 92. He had submitted his exam application before plaintiff. The job announcement and Danbury Civil Service Rules and Regulations both stated that ties were to be broken by the order in

---

1. The secondary tests were conducted on a pass/fail basis. Failure on any test led to a candidate's removal from eligibility. The State Police Polygraph Administration unit advised Danbury of the polygraph test failure rate and recommended selecting 45 candidates be tested so that the city would have the required number of candidates to fill the department's vacancies. Danbury selected all of the candidates with final scores of 95(47) to undergo further testing.

which returned exam applications were time-stamped.

In March, 1996, Danbury had an affirmative action plan ("the A.A. plan") in place. The A.A. plan detailed Danbury's affirmative action goals and stated that Danbury is an equal opportunity employer. In August 1997, Danbury organized a Diversity in Employment Task Force. The task force submitted a report ("the task force report") to the mayor in January 1998, which recommended modifying Danbury's civil service system to afford more opportunities for minorities and women.

## II. DISCUSSION

### A. Standards of Review

A motion to dismiss should be granted only when "it appears beyond doubt" that a plaintiff fails to state any claim upon which relief may be granted. FED.R.CIV.P. 12(b)(6); *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In deciding a motion to dismiss under Rule 12(b)(6), the complaint must be liberally construed most favorably to the plaintiff and all factual allegations are accepted as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The issue is not whether plaintiff will ultimately prevail, but whether he should be afforded the opportunity to offer evidence to support his claims. *Id.*

A party moving for summary judgment must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact has been raised, all ambiguities must be resolved and all reasonable inferences be drawn against the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The nonmoving party must present more than conclusory allegations to defeat a motion for summary judgment. *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997).

### B. Title VII Claims

1. Refusal to Hire/Disparate Treatment

Plaintiff alleges a violation of Title VII based on (1) Danbury's further testing of white candidates with written exam scores lower than plaintiff's; (2) Danbury's hiring of white candidates whose written exam scores were lower than plaintiff's; and (3) Danbury's hiring of one white candidate whose final score was the same as plaintiff's.

■ Under Title VII, a plaintiff makes out a prima facie case for disparate treatment in hiring by showing (1) that he is a member of a protected class; (2) that he actually applied for the position sought and was qualified; (3) that he was not hired; and (4) that the position remained open or was filled by a person not a member of plaintiff's protected class. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In essence, plaintiff must show that he was treated differently than similarly situated whites. *Martin v. Citibank, N.A.,* 762 F.2d 212, 217 (2d Cir.1985).

■ Plaintiff has not shown that he was treated differently than similarly situated whites at any point in the hiring process. Those who scored lower on the written exam and were tested or hired received preference points as veterans or special officers.[2] Also, the white appointee who had the same final score as plaintiff submitted his application before plaintiff. Thus, no genuine issue of fact exists as to whether he was similarly situated as other candidates who received preference points.[3]

---

2. One of the candidates sent for further testing was later determined to be ineligible for preference points. Her final score was adjusted accordingly and she was not hired.

3. Title VII provides, "nothing in this subchapter shall be construed to repeal or modify any Federal, State, territorial, or local law creating special rights or preferences for veterans." 42 U.S.C. § 2000e–11.

Plaintiff also attacks Danbury's tie-breaking procedure. He notes that Danbury failed to employ the tie-breaking procedure specified in its exam announcement. Since numbering applications produces no different result than time-stamping, plaintiff's argument is without merit. Plaintiff asserts that he was not notified that the time of his application would affect appointments in the event of a tie. Plaintiff, however, does not contest defendants' assertion that no applicant was so advised. Thus he does not show that he was treated differently. The undisputed facts thus do not support a refusal to hire claim. Summary judgment is granted to defendants on plaintiff's Title VII disparate treatment claims [Count One].

### 2. Disparate Impact

 Plaintiff also alleges that Danbury's hiring practices have an unlawful disparate impact on African–Americans. Under Title VII, "an unlawful employment practice based on disparate impact is established ... if ... (i) a particular employment practice causes a disparate impact on the basis of race." 42 U.S.C. § 2000e–2(k)(1)(A)(i). Racial imbalance in the workforce is not in itself sufficient to make out a disparate impact claim. *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 657, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). A plaintiff need not show an intent to discriminate, but that "the application of a specific or particular employment practice has created the disparate impact under attack." *Id.*

 Plaintiff has not established that Danbury's hiring practices have a disparate impact on African–Americans. He attributes the disparate impact to Danbury's refusal to advance him to further testing by which he could show his qualifications. However, he was ineligible for further testing after the addition of preference points. Further testing would not have elevated his eligibility listing. Danbury's assignment of preference points to deserving applicants does not disparately

impact African–Americans. Plaintiff does not suggest that Danbury prevents African–Americans from obtaining veteran's or special officer status. Summary judgment is granted to all defendants on plaintiff's disparate impact claim [Count Four].

### C. Section 1983 and Section 1981 Claims

Section 1983 imposes liability on persons who, under color of law, deprive United States citizens of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Plaintiff alleges that the individually named defendants[4] deprived him of substantive and procedural due process of law and of equal protection by failing to implement the goals of the A.A. plan and task force report.

### 1. Denial of Due Process

 A Constitutional due process claim requires a deprivation of life, liberty or property. U.S. Const. amend. XIV, § 1. Plaintiff's complaint fails to allege deprivation of any of these interests. A unilateral expectation of employment is not a property interest under the Constitution. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Huff v. West Haven Board of Ed.,* 10 F.Supp.2d 117, 122 (D.Conn.1998). The recommendations of the task force report and the A.A. plan to increase minority hiring do not create property interests. Neither document indicates that Danbury had abandoned its merit-based hiring practices.

 Plaintiff also has not established an unconstitutional deprivation of liberty. Liberty may be deprived in the hiring context by the imposition of "a stigma or disability that foreclose[s] [one's] freedom to take advantage of other employment opportunities." *Roth,* 408 U.S. at 573, 92 S.Ct. 2701. Plaintiff has not alleged that the actions of defendants prevented him

4. With the exception of Daniel Casagrande, these were the task force members.

from obtaining other employment. Thus, no issue of fact exists as to whether plaintiff was deprived of due process. Summary judgment is granted to all defendants on plaintiff's § 1983 due process claims [Count Two].

### 2. Denial of Equal Protection and Section 1981 Claim

■■■ Denial of equal protection and violation of § 1981 both require purposeful discrimination. *General Building Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). Purposeful discrimination cannot be established by conclusory allegations. *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

■■■ Defendants assert that plaintiff's § 1981 and equal protection claims rely on conclusory allegations. Plaintiff contends the appointment of a white candidate with the same written score as plaintiff establishes a violation of § 1981 and denial of equal protection. The tie-breaker mechanism which led to the appointment of the white candidate has neither a discriminatory purpose or effect and cannot be inferred to be purposefully discriminatory. Plaintiff fails to offer more than conclusory allegations and thus fails to state a claim upon which relief may be granted. Plaintiff's § 1981 claim and his § 1983 equal protection claim are dismissed [Count Two].

### D. Conspiracy Claim

A conspiracy claim under § 1985 requires a denial of equal protection or "of equal privileges and immunities under the laws." 42 U.S.C. § 1985. All of plaintiff's civil rights claims have been dismissed or subjected to summary judgment. Accordingly, summary judgment is granted to all defendants on plaintiff's § 1985 claim [Count Three].

### E. Fraudulent Misrepresentation

Plaintiff alleges that defendants' failure to implement the affirmative action goals in the A.A. plan and the task force report constitute fraudulent misrepresentation.

■■■ Fraudulent misrepresentation requires (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that is was made to induce the other party to act upon it; and (4) that the other party did so act upon the false representation to his injury. *Miller v. Appleby,* 183 Conn. 51, 54–55, 438 A.2d 811 (1981); *First Charter National Bank v. Ross,* 29 Conn.App. 667, 670, 617 A.2d 909 (1992).

■■■ Plaintiff's claim fails as a matter of law. Failure to achieve the A.A. plan and task force report goals cannot constitute fraudulent misrepresentation. They are aspirational statements which do not constitute statements of fact.[5] Defendants did not guarantee plaintiff employment or commit Danbury to replacing its merit-based hiring system. Plaintiff notes that the A.A. plan states for a fact that Danbury is an equal opportunity employer. The disposal of plaintiff's other claims demonstrates the lack of a question of fact in this regard. Summary judgment is granted to defendants on the fraudulent misrepresentation claim [Count Five].

### F. Promissory Estoppel

Plaintiff asserts that the statements contained in the A.A. plan and task force report and those in the written exam announcement that all passing candidates would be advanced for further testing constitute promises. Plaintiff argues that defendants should be estopped from denying them.

■■■ Under the doctrine of promissory estoppel, "[a] promise which the

---

5. It is not clear that, apart from achieving greater diversity in appointments, Danbury had not achieved its goals. Danbury made efforts to recruit minority applicants by placing ads in minority newspapers and sending announcements to minority churches.

promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action is binding if injustice can be avoided only by enforcement of the promise." *D'Ulisse–Cupo v. Board of Directors of Notre Dame High Sch.*, 202 Conn. 206, 213, 520 A.2d 217 (1987) (citation omitted). To invoke promissory estoppel, there must be "a clear and definite promise which a promisor could reasonably have expected to induce reliance." *Id.*

▮▮▮ Since the A.A. plan and task force report made only recommendations, they contained no "clear and definite promises." Furthermore, plaintiff alleges generally that he relied detrimentally on the exam announcement's statement that all passing candidates would be sent for further testing. Plaintiff does not dispute that further testing would have increased neither his eligibility standing nor his chances of appointment. Accordingly, plaintiff's reliance had no detrimental effect on his potential for employment. Thus, no genuine issue of material fact exists as to whether plaintiff relied on the exam announcement's statement to his detriment. Summary judgment is granted to defendants on the claim of promissory estoppel [Count Eight].

### G. Negligent and Intentional Infliction of Emotional Distress Claims

Plaintiff's negligent and intentional infliction of emotional distress claims are predicated upon claims that have been dismissed or been subjected to summary judgment. Accordingly, these claims are dismissed [Counts Six and Seven].

## III. CONCLUSION

Defendants' motion for summary judgment (doc. # 12) is GRANTED on plaintiff's Title VII, § 1985, fraudulent misrepresentation, and promissory estoppel claims and on plaintiff's § 1983 due process claim. Defendant's motion to dismiss (doc. # 12) is GRANTED on plaintiff's § 1981 and negligent and intentional inflic-

tion of emotional distress claims and on his § 1983 equal protection claim. The clerk shall enter judgment for defendants and close the file.

SO ORDERED.