MARY LONG, EXECUTRIX *v.* ANDREA C. SCHULL ET AL.

BOGDANSKI, C. J., PETERS, ARMENTANO, SHEA and DALY, Js.

Argued March 12—decision released May 19, 1981

*Joseph M. Tobin, Jr.,* with whom, on the brief, was *David Corso,* for the appellants (defendants).

*Stephen B. Alderman,* for the appellee (plaintiff).

PER CURIAM. The underlying facts in this case are as follows: The plaintiff's decedent, Ethel Mae Schull, entered the hospital in early March, 1975, for an ailment soon diagnosed as terminal cancer. On March 31, 1975, after she was informed of her condition and while still in the hospital, the plaintiff's decedent executed a power of attorney[1] in

[1] The relevant portion of the power of attorney provided: "To do each and every act pertaining to my property or providing for my personal care and comfort and payment of the cost thereof, as fully as I might do if personally present and which I become entitled,

favor of her stepson, the defendant, Andrea C. Schull.[2] The defendant obtained and presented the document, which was prepared by a legal secretary, to his stepmother at her request. Apparently, she desired to give the defendant the control of her possessions, but at the same time avoid any dealings with attorneys. After the plaintiff's decedent executed the power of attorney, she told the defendant where she had hidden her will and several savings account passbooks and instructed him to retrieve them. The defendant obtained possession of these items, and with the power of attorney, withdrew the funds from the savings accounts, depositing the money in accounts in his name, his wife's name, or both. He also disbursed funds from his stepmother's checking account. The parties stipulated that the total sum of money involved amounted to $25,001.64.

Both prior and subsequent to the plaintiff's decedent's death, a small amount of the money was disbursed from the checking account for the upkeep and maintenance of her home and to pay her outstanding bills. After her death, the defendants donated a large portion of the sum to religious organizations and for a holy spirit conference at the New Haven Coliseum. They expended the remainder for their own personal use, including a family trip to California.

---

sign and endorse checks, drafts, money orders, withdrawal orders and any other papers and documents in my name and for me and in my name to sign seal execute and deliver any and all deeds, mortgages, documents and papers of every description pertaining in any way to any of my property real or personal or to my safety deposit box, to hold and manage all my money and property of every kind, real and personal as fully as I might do if personally present and able."

[2] The other defendant is Schull's wife, Joan E. Schull. All references to the defendant are to Andrea C. Schull.

On April 20, 1975, the plaintiff's decedent died, leaving a will which had been executed on March 8, 1971. It named as executrix the plaintiff, Mary Long, sister of the testatrix and the primary beneficiary under the will. The plaintiff lived in Ohio and her contact with her sister consisted of letter writing, telephone calls and infrequent visits. The plaintiff, as the executrix of the estate of Ethel Mae Schull, commenced this action to recover the $25,001.64.

During the trial, conflicting testimony was offered by the parties. The defendants claimed that after the testatrix became aware of her condition, she intended to make a gift of her money to them. To support their position, they introduced the power of attorney and verbal expressions of her donative intent. On the other hand, the plaintiff attacked the credibility of the defendants and claimed that the defendants' right to the testatrix' funds was limited by the power of attorney and that they had wrongfully converted the money to their own use. The parties also offered conflicting versions of the relationship between the testatrix and the defendants, of the relationship between the testatrix and the plaintiff, and of the strength of the testatrix's religious faith. There was also a question whether the defendant closed out the testatrix's savings accounts before or after her death.

The trial court focused on the credibility of the witnesses and found the defendants' testimony "totally incredible and unworthy of belief." It concluded that no gift of the funds had been made to the defendants and that only $800 of the $25,001.64 had been spent within the authority of the power of attorney. It also concluded that the power of attor-

ney terminated at the testatrix's death so that the balance of the money disbursed by the defendants actually belonged to the estate and had been wrongfully expended. Consequently, it rendered judgment in favor of the plaintiff in the amount of $24,201.64. The defendants have appealed from that judgment, raising three claims of error.

The first issue is whether the plaintiff's decedent had made a gift to the defendants. On appeal, the defendants argue that a gift had been made to them as a matter of law. When an estate is a party, the burden is on the person claiming the gift to prove the claim by clear and satisfactory proof. *Kukanskis* v. *Jasut,* 169 Conn. 29, 32, 362 A.2d 898 (1975). The question of whether a gift inter vivos or causa mortis has been made is within the exclusive province of the court. Id., 32–33; *Bell* v. *Bloom,* 146 Conn. 307, 311, 150 A.2d 300 (1959); *Hartford-Connecticut Trust Co.* v. *Slater,* 114 Conn. 603, 612, 159 A. 578 (1932). The determination of whether a gift has been made is not reviewable unless the conclusion of the court is one which cannot reasonably be made. *Kriedel* v. *Krampitz,* 137 Conn. 532, 534, 79 A.2d 181 (1951). The credibility of the witnesses and the weight to be accorded to their testimony is for the trier of fact. *Smith* v. *Smith,* 183 Conn. 121, 123, 438 A.2d 842 (1981); *Chazen* v. *New Britain,* 148 Conn. 349, 352, 170 A.2d 891 (1961). This court does not try issues of fact or pass upon the credibility of witnesses. *Soneco Service, Inc.* v. *Bella Construction Co.,* 175 Conn. 299, 300, 397 A.2d 1364 (1978). The court's conclusion that no gift had been made to the defendants is not clearly erroneous in light of the evidence, the credibility of the witnesses, and the record. This conclusion cannot be overruled. See **Practice Book**

§ 3060D; *Rodriguez* v. *New Haven,* 183 Conn. 473, 480, 439 A.2d 421 (1981); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The defendant's second assignment of error involves the power of attorney executed by the plaintiff's decedent. This instrument was a written, formal contract of agency, creating a principal-agent relationship between her and the defendant. 1 Mechem, Agency § 35; 3 Am. Jur. 2d, Agency § 23; Black, Law Dictionary (5th Ed.). " '(1) Agency is the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. (2) The one for whom action is to be taken is the principal. (3) The one who is to act is the agent.' Restatement (Second), 1 Agency § 1." *McLaughlin* v. *Chicken Delight, Inc.,* 164 Conn. 317, 322, 321 A.2d 456 (1973); see *Botticello* v. *Stefanovicz,* 177 Conn. 22, 25, 411 A.2d 16 (1979). The authority of the defendant-agent was defined by the terms of the power of attorney. *Brassert* v. *Clark,* 162 F.2d 967, 973 (2d Cir. 1947); Seavey, Agency § 21B; Restatement (Second), Agency § 37. Unless the agency is coupled with an interest, which is not the case here, the well-settled rule is that the agency relation created by this power of attorney terminated at the death of the principal. *DiBlasi* v. *DiBlasi,* 114 Conn. 539, 542–43, 159 A. 477 (1932); Seavey, Agency §§ 11, 48; 3 Am. Jur. 2d, Agency § 51.

The defendant's argument that the agency relationship established by the power of attorney survived the death of the plaintiff's decedent is without a legal basis. Likewise, there is no merit in the

defendants' claim that the instrument signed by the plaintiff's decedent was not a written contract of agency, but rather a misnamed document which actually indicated the donative intent necessary to prove a valid gift  The legal effect of a power of attorney cannot be altered by proof of what one or both parties understood the legal effect to be. *DiBlasi* v. *DiBlasi,* supra, 544.  Finally, the court considered independently the issue of whether the defendants' expenditures of the funds entrusted to them were within the authority granted by the power of attorney and the issue of whether a valid gift of the funds had been made to them.

The final claim of error deals with the court's memorandum of decision.  The defendants argue that the language[3] employed proves that the court abused its discretion as a trier of fact.  Practice Book § 3060B required the court in this case to pre-

---

[3] The entire memorandum of decision is set out:

"The principles of law recited in the plaintiff's and defendants' brief are accurate.  They are not in dispute.  What is in serious question is the credibility of the witnesses and the believability of their testimony.  Ultimately, the central issue was one of fact for the determination of the trier.

"There is no doubt in the court's mind that a legal power of attorney was executed by the decedent and that within the authority of that instrument the defendants spent $800.00  The power of attorney terminated with the author's death and the balance of the monies disbursed by the defendants belong to the estate.  The better, weightier and more persuasive evidence sustained the plaintiff's burden of proof.  To the contrary, the defendants' testimony was totally incredible and unworthy of belief.  It cannot be concluded that the deceased intended to give her money to the defendants as a gift and to deny to her sister the estate she willed to her.

"The thousands of dollars the defendants gave to religious organizations were donated to them because, as the defendant Andrea Schull testified, it is God's money. *It may very well belong to Him but is certainly does not belong to them.*

"Judgment may enter for the plaintiff to recover of the defendants the sum of $24,201.64 plus costs."  (Emphasis added.)

pare a memorandum of decision, but the words it used to perform this task were within its broad judicial discretion. Reversal is required where the abuse of discretion is manifest or where injustice appears to have been done. *Thomas* v. *Thomas*, 159 Conn. 477, 480, 271 A.2d 62 (1970). We find no abuse of discretion.

There is no error.