[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE:MOTIONS FOR SUMMARY JUDGMENT(DOCKET NOS. 260, 261, 262, 263 AND 264)
This is an action brought by Michael and Gail Tucci, CT Page 6806 husband and wife, seeking damages for injuries sustained by Michael Tucci in an accident which occurred on or about April 26, 1988. At that time, the plaintiff Michael Tucci was an employee of C. Napolitano Son, and was performing plumbing work located at 426 Main Street in Norwalk as an employee of said company. The plaintiff claims that the defendants were either owners of said premises, in exclusive possession and control of the premises or that they were involved in renovation and construction of a hotel on the premises. The plaintiff claims that, while using an attic catwalk, he was caused to fall suddenly and without warning through the ceiling from the attic to the floor below, suffering injuries. The plaintiff claims that the defendant maintained defective and unsafe premises, that they violated the building code, that they failed to properly supervise or inspect work and perform work in accordance with the law, and that they failed to warn the plaintiff of defective and dangerous conditions. The plaintiff also claims that the defendant failed to require the closing off of the dangerous areas.
Mr. Tucci and his wife filed a six count amended complaint dated March 26, 1993 against Days Inn, Norwalk Hotel Associates, Days Inn of America, Inc. and Concord Hotels, Inc. ("corporate defendants"), Wernert Construction ("Wernert"); and John Fabrizio, Ralph Fabrizio, Mark Fabrizio, Christopher Fabrizio and Cora Sue Farina. Counts one, five and six, which are addressed to all defendants, are the subject matter of the motions for summary judgment, docket numbers 260 through 264 inclusive.
In count one, the plaintiff alleges negligence based on defective premises. In count five, the plaintiff alleges violations of the Connecticut Unfair Trade Practices Act ("CUTPA") based on Wernert's alleged use of defective materials and unqualified labor and the failure of the defendants to inspect the premises. In count six, the plaintiff Gail Tucci incorporates count five and claims a loss of consortium.
The moving parties are owners and lessors of the property on which the other defendants were constructing a building. The movants have submitted, in conjunction with the motions for summary judgment, a supporting memorandum of law, a copy of the ground lease of the real estate owned by the movants and also affidavits from each movant. Although the plaintiffs filed a memorandum in opposition which is dated November 15, 1993, said memorandum was not accompanied by affidavits or other supporting documentation. A supplemental memorandum was filed by CT Page 6807 the movants in support of their motions on January 31, 1994, and this court heard argument on February 14, 1994.
In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. A motion for summary judgment should be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Scinto v. Stamm, 224 Conn. 524, 530 (1993). "Where a party opposing a motion for summary judgment does not respond to the affidavit of the movant, the court is entitled to rely on the facts stated in the affidavit of the movant." Bartha v. WaterburyHousing Wrecking Co., 190 Conn. 8, 11-12 (1983).
Once the moving party presents evidence that supports its claim, the "party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such issue. Scinto v. Stamm, supra, 530. "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court . . . ." (Citations omitted; internal quotation marks omitted.) Connecticut v. Goggin, 208 Conn. 606, 616 (1988). Pursuant to § 382 of the Practice Book, where a party opposing summary judgment lacks personal knowledge of facts that justify the opposition, "[the] proper course is to file an affidavit stating that he could not, for reasons stated, present facts essential to justify his opposition." Batick v. Seymour,186 Conn. 632, 65 (1982).
In their opposition to the motions for summary judgment, the plaintiffs argue that the affidavits are self-serving. Also, the defendants argue that there is no factual basis to believe that the documents submitted by the movants are the only operative documents. The plaintiffs contend that there is no continuity between the two submitted documents because the lessee in the first document, the lease, is Interstate Properties and the lessee in the second document, the amendment, is Norwalk Hotel Associates.
Practice Book § 380 provides that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." CT Page 6808 In the present case, the affiants attest to personal knowledge of the facts in the affidavit. Each affiant attests that he or she had no ownership interest in the building, had no involvement in its design, construction or repair, never agreed to repair or maintain the building, and never employed anyone to repair or maintain the building.
The court finds that each affidavit on its face appears meet the requirements of Practice Book § 280. Since the plaintiffs did not submit any affidavits or other proof contesting the claims made by the movants in their affidavits, this court accepts any uncontested facts contained in the movants' affidavits. Bartha v. Waterbury House Wrecking Co., supra, 11-12.
The amendment submitted with the lease does reflect that the lease was assigned by the original lessee to Norwalk Hotel Associates, the lessee in the amendment. This supports that there is no consistency in the documents notwithstanding the plaintiffs' contention that there is no continuity between the lease and the amendment.
 I COUNT ONE: LIABILITY FOR INJURY DUE TO DEFECTIVE PREMISES
In their memorandum, the movants argue that the lease and their affidavits show that, with respect to count one, they are not liable as a matter of law because they never had possession of or control over the premises and that they had no responsibilities regarding the construction, maintenance and repair of the building. They point out that the lease was a ground lease, covering only the real estate and not buildings, improvements and fixtures placed on the real estate by the lessee.
The plaintiffs respond by arguing that various provisions of the lease indicate that the defendants had possession and control. In particular, the plaintiffs cite the provisions that require the lessors to cooperate with procedures necessary to obtain zoning approval and provisions that require the lessors to send tax bills to the lessee. The plaintiffs also cite provisions that allow the lessors to terminate the lease and enter the real estate if the lessee is in default for a period of thirty days after written notice; and provisions that require the lessee to maintain liability insurance for the benefit of the lessee and the lessors. The plaintiffs argue that an issue of CT Page 6809 fact exists with respect to the possession and control of the premises based on the cited provisions.
"Liability for an injury due to defective premises does not depend on title, but on possession and control." Farlow v.Andrews Corp. , 154 Conn. 220 (1966). "The word `control'. . . refers to the power or authority to manage, superintend, direct or oversee." Panaroni v. Johnson, 158 Conn. 92, 98 (1969). More specifically, in order to impose liability for a defect in the premises on a defendant, the plaintiff must be able to show that the defendant had control over that portion of the premises. By showing that the defendant had control over that portion of the premises, the plaintiff is thereby showing that the defendant has a right and duty to remedy any defects which the plaintiff claims has caused him injury.
The question of whether a lessor retains control of leased property can best be determined by examining the lease and all of the terms contained therein. "Unless it is definitely expressed in the lease, the circumstances of the particular case determine whether the lessor has reserved control of the premises or whether the premises were under the exclusive dominion of the tenant, and it becomes a question of fact . . . ." Panaroni v.Johnson, supra.
The lease submitted in support of the movants' motions is almost forty pages long with forty-three sections. In addition to those provisions referred to by the plaintiff in its argument, several others are significant with respect to possession and control. One of the provisions excludes from its definition of real estate which is leased those buildings, improvements and fixtures to be placed on the land by the lessee. Another provision gives the lessee and any sublessee the right to use and/or occupy the real estate for motel and retail operations and "such lawful purpose or purposes as lessee may decide upon." It also allows the lessee to make alterations, additions and improvements to the real estate without the lessor's consent. It also provides that the lessee agrees, at its own expense, to maintain improvements constructed on the real estate, and to comply with applicable laws and regulations regarding the use and occupancy of the land. The lessors have a right to cure the lessees default of any covenant in the lease, but only after thirty notice has been provided.
A fair reading of the lease is that the movants had CT Page 6810 neither possession nor control over the catwalk from which Mr. Tucci fell. Also, the amendment to the lease does not change any of the provisions in the lease which are material to the issue of control by the lessor. There are provisions in the lease which, when read in the context of the lease as a whole, support the conclusion that the movants had no control. For example, the lessors had to send copies of the tax bills to the lessee because, pursuant to the lease, the lessee agreed to pay the taxes on the real estate. Also, the provision involving the lessors' participation in obtaining necessary approvals for development requires the cooperation of the lessors but does not give the lessors any say in the plans themselves. Also, the lessors' rights to take possession of the property do not arise until the lease terminates and the lessors' right to terminate the lease because of a default by the lessee does not arise until the lessors have given written notice to the lessee and if the default continues, for thirty days after such written notice is given.
For the foregoing reasons, the motions for summary judgment on count one of the complaint are hereby granted.
 II COUNT FIVE: CONNECTICUT UNFAIR TRADE PRACTICES ACT CLAIMS
General Statutes § 42-110b(a) prohibits individuals from engaging in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by § 42-110b may bring an action to recover actual damages." General Statutes § 42-110g(a).
The plaintiffs allege in their complaint that the movants owned and leased the property and that the various corporate defendants had exclusive control and possession of the premises and that they conducted business by entering into contract for the construction and renovation of the premises. The plaintiffs also allege that Wernert was the contractor responsible for the construction and supervision of the construction project on the property and that Wernert was the agent of all of the other defendants. Plaintiffs allege that Wernert hired Napolitano 
Sons, Michael Tucci's employer, to do work on the premises. It is further alleged by the plaintiffs that the movants impliedly consented to Wernert's use of defective materials and to CT Page 6811 unqualified labor and, also, that they failed to inspect the premises. Although the plaintiffs allege that Wernert was the agent of all other defendants, the plaintiffs do not allege that the movants entered into any construction contracts, an allegation that is made with respect to the other defendants.
The movants claim that their affidavits show they had no involvement in the use of materials or labor on the sight and, therefore, that they could not have engaged in the alleged unfair methods of competition and unfair or deceptive acts or practices. They further argue that they were not engaged in trade or commerce and that, since they lack possession and control of the premises, they had no duty to inspect. The plaintiffs position is that by leasing the real estate, the movants have conducted business within the meaning of CUTPA.
The court shall analyze separately the alleged unfair or deceptive acts or practices which form the basis of the plaintiffs' CUTPA claims because the act or practices alleged require different legal analysis to determine whether or not the movants have proven the nonexistence of any material fact and that they are entitled to judgment as a matter of law. With respect to the alleged use of unqualified labor and defective materials, because the plaintiffs allege that Wernert, not the movants, committed the acts complained of, the court must consider whether the movants are vicariously liable for Wernert's alleged violations of CUTPA. With respect to the failure to inspect claim, because the plaintiffs' allege that the movants themselves failed to inspect the premises, the court must consider whether the movants are liable under CUTPA for their failure to inspect.
 A USE OF DEFECTIVE MATERIALS AND UNQUALIFIED LABOR
The plaintiffs claim that the movants are liable for Wernert's use of defective materials and unqualified labor. To hold the movants liable for such practices by Wernert, Wernert must have been acting as the movants' agent. "Agency is the fiduciary relationship which results from the manifestation of consent of one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." (Citations omitted, internal quotation marks omitted.)Long v. Schull, 184 Conn. 252, 256 (1981). "Ordinarily, the question of agency is one of fact to be determined by the trier of CT Page 6812 fact." West Haven Sound Development Corp. v. West Haven,201 Conn. 305, 311 (1986).
In the present case the movants essentially deny that Wernert is their agent and assert (in their affidavits) that they had no involvement in the construction project at all. It appears to the court that the lease supports the movants' contention that they had no involvement with the construction project. Although the plaintiffs allege an agency relationship between Wernert and the movants, there is no evidence to support this pivotal allegation and there is also no evidence to rebut the movants' affidavits. As previously noted, the plaintiffs did not submit an affidavit pursuant to Practice Book § 382 claiming the existence of facts supporting opposition to the motion for summary judgment and explaining why they cannot produce evidence supporting their opposition.
Accordingly, the court is without any evidence to support a finding that a material fact exists with respect to the allegation of such an agency relationship. In the absence of an agency relationship, the plaintiffs' CUTPA claim with respect to the use of unqualified labor and defective materials fails as a matter of law.
With regards to the movants' contention that they were not involved in trade or commerce, the plaintiffs argue that the movants' leasing their property constitutes trade or commerce. By its terms, CUTPA prohibits unfair or deceptive acts or practices "in the conduct of any trade or commerce." General Statutes § 42-110b(a). The act allows an individual who suffers an ascertainable loss "as a result of" the violative acts or practices to bring an action. General Statutes § 42-110g(a). "[T]he plaintiff must show not only that [the defendant] engaged in an unfair trade practice, but also that he suffered harm as a result." Haesche v. Kissner, 229 Conn. 213, 223 (1994). The plaintiffs argue that the movants trade or business in the case at bar is commercial leasing. However, the plaintiffs have alleged injuries resulting from the use of defective materials and unqualified labor. The alleged use of defective materials and unqualified labor did not occur in the context of the movants' trade or business. Also, the plaintiffs have not claimed that their injuries resulted from the movants' trade or business.
In the absence of an agency relationship between the movants and Wernert, the movants, as a matter of law, cannot be CT Page 6813 held liable under CUTPA for injuries caused by the use of defective material and unqualified labor.
 B FAILURE TO INSPECT
With respect to the failure to inspect claim, in order to be liable for the failure to inspect the premises the plaintiffs must show that the movants had control over that area and therefore had a right and a duty to remedy any defective condition. Edgar v. Burger King Corp. , supra. Although the theory of liability in this count is based on CUTPA, it would anomalous for the movants to be held liable under CUTPA for failure to inspect if they have no right or duty to inspect. Also, there are no allegations in the complaint that the movants led the plaintiffs to believe that they would inspect or in any way commit an unfair or deceptive act by not inspecting the premises.
Since the court has already found with respect to count one that the movants lacked control over or possession of the premises and therefore had no duty to inspect, then it follows that there is no legal foundation for a CUTPA claim based on the failure to inspect. Accordingly, the movants cannot be held liable under CUTPA for failure to inspect. For the foregoing reasons, the motions for summary judgment with respect to CUTPA claims in count five of the amended complaint is hereby granted.
 III COUNT SIX: LOSS OF CONSORTIUM
Count six is a loss of consortium claim which relies and is based upon count five. The movants claim that they are entitled to summary judgment on the derivative loss of consortium claim of Gail Tucci since they are entitled to summary judgment on all counts directed to them. Since the court has granted summary judgment with respect to count five, it follows that it must grant summary judgment with respect to count six, since loss of consortium claims are derivative in nature. Sanzone v. Board ofPolice Commissioners, 219 Conn. 179, 199 (1991).
Accordingly, the motions for summary judgment with respect to count six are hereby granted.
EDDIE RODRIGUEZ, JR., JUDGE CT Page 6814