[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a claim for the return of a deposit in the amount of $2,267.76, attorney's fees and damages for a violation of C.G.S. § 42-110 (CUTPA).
The plaintiffs allege in the First count, paragraph 3 of the Second Revised Complaint, that on or about February 18, 1992 the plaintiffs contracted in writing with the defendant Joan F. Richard, d/b/a Raymar Custom Kitchens Baths (hereinafter Raymar) for the remodeling of their kitchen.
Raymar agreed to provide and install Corian countertops in a color selected by the plaintiffs for the agreed sum of $4,535.51. The plaintiffs paid Raymar $2,267.76 as a deposit.
On January 31, 1992 Raymar, by letter, quoted the installation of the Corian tops with prices and installation charges (see Exh. D). The letter was signed by Joan Richards, President. On February 18, 1992 Camille Paolillo signed an acceptance for the installation of Corian Sierra Color for the sum of the contract with one-half down (Exh. F). The notice of cancellation was attached (see Exh. P).
Raymar asserts in the fourth special defense that the plaintiffs have sued the wrong legal entity.
Camille Paolillo testified that she went to Raymar in 1960 and the owners were then on Blake Street in New Haven. In 1992 she contacted Raymar then on Dixwell Avenue (Exh. B). When she could not reach by phone Raymar listed on Whalley Avenue, she went personally to 1377 Whalley Avenue where she met Joan Richards. In Paolillo's conversation with Joan Richards she was not told that Joan was an officer or what her relationship was with Raymar. Paolillo had been there before and Richards said she had the plans. They discussed color. Their meeting lasted one-half hour. On January 31, she received Exhibit D. In February Richards came to Paolillo's house They discussed where the Corian was to be installed. Paolillo gave Exhibit P to Richards. Richards did not give her a date to start. It took 6-8 weeks for the carpenter to arrive. No discussion was ever had as to the CT Page 5114-Q date of completion. The carpenter started the job in March and it took some 6-8 weeks to finish although she expected it to take 3 days. John Apotria was doing the job for Richards. John Apotria did not testify The Corian did not match in color. Richards tried to locate a matching color but never succeeded.
Apotria came back in a few days and it was suggested that the counters be switched for a better match, which Paolillo refused. Apotria wanted Paolillo to sign Exhibit H dated April 28, 1992, "Acceptance of Corian Counters", which she refused to do. In Exhibit H (Raymar letterhead) it is stated and acknowledged that there is a slight difference in color. Raymar was seeking an acceptance. Apotria at this point said he could not continue unless Paolillo signed Exhibit H. Plaintiff Camille Paolillo tried calling Richards and when unable to contact her on April 28, 1992, she wrote a letter (Exhibit I) dated May 1, 1992 in which she stated that the plaintiffs did not want to have Raymar Kitchen Bath complete the job. Ultimately Camille Paolillo had Apotria complete the job. She discussed with Apotria about doing the work, which he agreed. Apotria removed the Corian top of Richard's and put them in her basement. Apotria did get matching color tops.
Defendant argues that Joan Richards Enterprises Inc. was a Connecticut corporation and that Raymar was a trade name. The defendant failed to establish that the corporation had registered the trade name.
The defendant further cites New England Whalers Hockey Clubv. Nair, 1 Conn. App. 680, 474 A.2d 810 (1984), to support its arguments concerning disclosure as to the identity of the agent and principal. Section 327 in 3 Am.Jur.2d Agency, at page 884, states:
 Caution: Where sufficient information is disclosed upon the face of the contract by the agent to disclose to a reasonable person the identity of the principal, the principal and not the agent is liable. Moreover, where the other party has actual knowledge of the agency and the identity of the principal, the agent will be relieved from liability, whether he himself makes the disclosure or the other party acquires the knowledge from some other source. Not only the duty of disclosure but the time of disclosure is important. In order to protect the agent from personal liability, it is essential that the principal be disclosed to the third person at the time the CT Page 5114-R transaction is being conducted. On a contract, for example, it is vital that the agent disclose his principal at the time it is made in order to escape personal liability thereon, and the fact that he discloses the identity of his principal after the contract is executed or consummated will not relieve him from liability. However, if the third person actually knew that the agent was acting for a principal and also knew the principal's identity at the time of the transaction in question, the principal is considered to have been disclosed.
Section 327 states further that:
 The disclosure by the agent of the fact of the agency and the name of the principal may, of course, be proved by direct evidence, but the disclosure, or the third persons knowledge, may also be shown by the circumstances surrounding the transaction and the course of dealing between the parties.
The defendant has not met her burden of proof in the fourth special defense. It was the duty of Richards to disclose to Paolillo that she was a corporation doing business under a trade name. Richards wanted the benefit of the use of the name Raymar but failed to meet her responsibility of disclosure of the facts to relieve her of liability in the present case.
All of the other special defenses are also of no avail in this instance since as discussed the defendant has failed to meet her burden of proof under the circumstances of this case.
The court further finds that the defendant breached the contract in this case and the plaintiff is entitled to recover her deposit plus 10% interest from May 1, 1992 to present date. The court agrees with the argument of the plaintiff that a customer is entitled to j have matching counter tops in her kitchen for which she contracted.
Although Exhibit O signed by "Joan Richards Received" does not have notice of cancellation attached, Exhibit P which constitutes the agreement did have attached a; Notice of Cancellation. The court finds that although the notice of cancellation is not dated it bears the date of February 18, 1992, the date of acceptance and the notice is effective notice in accordance with the instructions thereunder. The court finds that there was no violation under C.G.S. § 42-135a. CT Page 5114-S
The only issue left to be decided in this case is as to the starting date and completion date so as to entitle her to costs and reasonable attorney's fees. In Rizzo Pool Co. v. DelGross,232 Conn. 666, 684 n. 28, the court said:
 "A party seeking to recover damages under CUTPA must meet two threshold requirements. First, he must establish that the conduct at issue constitutes an unfair or deceptive trade practice. Webb Press Services Corporation v. New London Motors, Inc., 205 Conn. 479, 481-84, 533 A.2d 1211 (1987); Conaway v. Prestia, 191 Conn. 484, 492-93, 464, A.2d 847 (1983). Second, he must present evidence providing the court with a basis for a reasonable estimate of the damages suffered. Barco Auto Leasing Corporation v. House, 202 Conn. 106, 120-21, 520 A.2d 162 (1987); Conaway v. Prestia, supra, 494; Hinchliffe v. American Motors Corporation, 184 Conn. 607, 619, 440 A.2d 810 (1981)." A. Secondino Son, Inc. v. LoRicco, 215 Conn. 336, 343, 576 A.2d 464 (1990); see also General Statutes § 42-110g(a) ("[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . . may bring an action . . . to recover actual damages").
The plaintiffs have not met their burden of proof to establish that the defendant engaged in unfair or deceptive trade practices. The plaintiffs failed to establish that the acts of the defendant were immoral, unethical or deceptive.
The plaintiffs did not show that the costs of having Apotria complete the contract was greater than the contract with Raymar. Further, the plaintiff failed to establish any losses as a result of the delays. The court cannot speculate as to the value of the inconvenience caused to the plaintiffs.
Notwithstanding that failure to provide a starting and completion date under CUTPA is a per se violation of §20-427(a)(7), the court finds in this case that the plaintiffs have failed to establish any damages caused by such omission in the contract. The plaintiffs did not demand or request any specific time for the start of the job or as to when the Corian tops would be made available by the supplier.
 Awarding punitive damages and attorney's fees under CUTPA is discretionary; General Statutes § 42-110g(a) CT Page 5114-T and (d); see Bailey Employment System, Inc. v. Hahn,545 F. Sup. 62, 73 (D. Conn. 1982), aff'd, 723 F.2d 895 (2d Cir. 1983); and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done. Sturman v. Socha, 191 Conn. 1, 7, 463 A.2d 527 (1983); Long v. Schull, 184 Conn. 252, 258, 439 A.2d 975 (1981); Lamont v. New Hartford, 4 Conn. App. 303, 307, 493 A.2d 298 (1985). "In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. Collens v. New Canaan Water Co., 155 Conn. 477, 489, 234 A.2d 825 (1967). In fact, the flavor of the basic requirement to justify an award of wanton and malicious injury, evil motive and violence. Triangle Sheet Metal Works, Inc. v. Silver, 154 Conn. 116, 128, 222 A.2d 220 (1966)." Venturi v. Savitt, Inc., 191 Conn. 588, 592, 468 A.2d 933 (1983).
For the reasons outlined, this court finds in favor of the defendant in the Second Count.
Accordingly, judgment is entered in favor of the plaintiffs on the First Count in the amount of $2,267.76 plus interest of $1,360.66 and court costs.
Frank S. Meadow, State Trial Referee