[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS
On January 14, 1998, the plaintiff, Carolyn Flennessey, both individually and as the representative for a class of persons similarly situated, filed an action against the defendants, Connecticut Valley Fitness Club (CVFC) and Bally Total Fitness Corporation (Bally).[1] A revised complaint, dated March 16, 1999, contains five counts.
Count One is a class claim alleging that the health club contracts sold by the defendant materially violate the Health Club Act, General Statutes § 21a-216 et seq. because: 1) they contain an improper automatic renewal clause; 2) fail to include a proper equipment list and 3) fail to include a "Buyer's Right to Cancel" statement in the required typeface with a proper notification address. Count Two is a subclass claim for a violation of the Health Club Act which incorporates all the alleged Count One violations. Count Two further alleges: 1) that the contracts are in CT Page 12912 the form of negotiable promissory notes but fail to state in the required bold-faced type on the face page that such a note may be discounted or sold to third parties and 2) that the time period for the payment of the promissory note exceeded the duration of the contracts.
Count Three is a class claim for a per se violation of the Connecticut Unfair Trade Practices Act (CUTPA), C.G.S. § 42-110a et seq., based upon the alleged violations of the Health Club Act in Count One.[2]
Pursuant to C.G.S. § 42-110g(a), Count Three also seeks injunctive relief in the form of: 1) an order to compel the defendant to amend their form of contract to comply with Connecticut law and 2) an order to prohibit the defendant from collecting payments from a bank account or credit card from all members of the class whose initial contract duration has expired and who have not renewed their contracts in writing.
Count Four is a subclass claim for a per se violation of CUTPA based on the violations alleged in Count Two. Finally, Count Five is an individual claim by Hennessey for a per se violation of the Health Club Act; 1) that the defendant failed to offer the plaintiff and others a one year contract and 2) that certain provisions concerning pricing, cancellation, moving and disability were not posted in a conspicuous place where the contract was entered into (allegedly in violation of a December 23, 1994 Consent Order entered into between the defendant and the Commissioner of Consumer Protection).
Procedural Background
On or about October 11, 2000, CVFC offered to stipulate to a judgment in Hennessey's favor in the amount of $399.00 (triple the amount purportedly paid by Hennessey under her health club contract) plus costs and attorney's fees. On the same day, in the companion case Rizek v. Connecticut Coastal Fitness Centers (CCFC), the defendant offered to stipulate to a judgment in Rizek's favor amounting to $1954.26 plus costs and fees. These offers were not accepted.
On April 18, 2001 CVFC and CCFC moved to dismiss the Hennessey and Rizek actions for mootness and lack of jurisdiction, arguing that the October settlement offers rendered the plaintiffs' claims moot and deprived the court of subject matter jurisdiction. On May 2, 2001, plaintiffs moved for summary judgment in both cases and moved for class certification. On May 9, 2001, the plaintiffs filed a consolidated memorandum of law in opposition to the motions to dismiss.
On May 14, 2001, defendants, moved for an extension of time to respond or object to plaintiffs' motion for class certification and requested a status conference. Defendants argued that in order to properly respond to CT Page 12913 the motion they must be given additional time to conduct discovery, including, but not limited to, depositions of the named plaintiffs an the proposed new plaintiffs as well as plaintiffs' counsel Attorney Daniel S. Blinn. Defendants further argued that the motion to dismiss, if granted, would potentially end the case and make the motion for certification of class moot. On June 26, 2001, defendants filed a consolidated reply memorandum of law in support of the motions to dismiss.
Legal Standard for Motion to Dismiss
Mootness of a case or controversy deprives a court of its subject matter jurisdiction. Community Collaborative Bridgeport, Inc. v. Ganin,241 Conn. 546, 551 n. 5, 698 A.2d 245, (1997), Kleinman v. Marshall,192 Conn. 479, 484, 472 A.2d 772 (1984). Whether or not one is litigating individually or on behalf of a class, the proper standing must be demonstrated or a case must be dismissed.
In its analysis of a motion to dismiss, a Connecticut court must evaluate the claims and the evidence in the light most favorable to the plaintiff. Thomas v. West Haven, 249 Conn. 385, 734 A.2d 535 (1999). Plaintiffs offered evidence "is to be taken as true and every reasonable inference is to be drawn in the plaintiff's favor." Tomasso v. ArmorConstruction Paving, Inc., et al., 187 Conn. 544, 547, 447 A.2d 406
(1982). Thus, the facts alleged in the complaint must be viewed as true by this court in formulating its decision as to whether or not to dismiss this case.
Mootness
In its adjudication of whether or not defendant has a right to dismissal on the basis of mootness of plaintiff's claims, this court has considered two issues that are at the heart of the controversy between the parties:
1. Did defendant's offer of judgment provide complete relief or all that the plaintiff could receive at trial and thus render her claims moot, non-justiciable and thereby annul her standing to sue?
2. If the unaccepted offer of judgment is complete enough to extinguish the plaintiff's individual claims, are there any surviving class claims which preclude a finding of mootness?
The Offer of Judgment
The defendant's memorandum of law accompanying his motion to dismiss asserts that the defendant's offer of judgment rendered her individual CT Page 12914 claim moot because: 1) "CVFC offered plaintiff the full amount that she could have recovered had this case proceeded to trial" (defendant's memorandum at 2) including treble damages; 2) "plaintiff cannot recover any more under her CUTPA claim than she could recover for her claim under the Health Club Act" (defendant's memoranda at 5); and, 3) the plaintiff lacked the requisite standing to seek the injunctive relief available under CUTPA.
In his consolidated memorandum of law in opposition to the motion to dismiss, plaintiff argues that the offered relief is not complete, that plaintiffs are also entitled to seek CUTPA punitive damages, and that the action is not moot. Defendant argues, in his consolidated reply memorandum of law in support of the motions to dismiss, that plaintiffs have no right to CUTPA punitive damages; they are only awarded at the discretion of the court. Defendant further argues that since plaintiffs were offered treble damages under the Health Club Act and since, "treble damages are punitive damages," (citing Westport Taxi Service, Inc. v.Westport Transit District 235 Conn. 1, 41 n. 44, 664 A.2d 719 (1995), a case which involved not CUTPA but Connecticut's Anti-Trust Statute, C.G.S. § 35-24 et seq.), "plaintiffs have been offered all the punitive damages they could have recovered. . . ." (defendant's memorandum at 4).
Punitive Damages under CUTPA
Under the traditional common law rule, punitive damages are restricted to the costs of litigation, including attorney's fees less taxable costs. Lenz v. CNA Assurance Co., 42 Conn. Sup. 514, 515, 630 A.2d 1082
(1993). CUTPA provides for the equivalent of common law punitive damages for attorney's fees and costs under C.G.S. § 42-110g(d). But in addition, in cases of particularly egregious conduct, CUTPA provides for a court to use its discretionary powers to levy punitive damages for their deterrent effect. In Lenz the court found that
 [t]he legislature departed from the narrow scope of common law punitive damages, however, when it adopted § 42-110g(a) of CUTPA, which provides, "that the court may, in its discretion award punitive damages and may provide such equitable relief as it deems necessary or proper. . . . This statutory provision allows for punitive damages based upon a theory of deterrence, whereas the common law premise of such an award is compensation. . . . This leaves the court to conclude that the General Assembly intended to expand by statute what case law had traditionally limited to costs and counsel fees. . . . Once deterrence rather CT Page 12915 than compensation becomes the focus of CUTPA punitive damages, however, then the financial standing of the party against whom damages are sought becomes relevant and material. CUTPA neither sets out any formula for arriving at the amount nor sets a maximum of a double or treble damages award to deter future conduct. As with the biblical widow's mite, the financial impact depends on financial circumstances. An amount that might deter a poor widow could seem trifling and leave undeterred a corporate entity with large financial resources.
Thus, both the award and the amount of CUTPA punitive damages, if any, are completely within the discretionary power of Connecticut courts and only rarely interfered with upon appeal. The standard for the type of conduct which justifies awarding punitive damages under CUTPA was established in Gargano v. Heyman, 203 Conn. 616, 622, 525 A.2d 1343
(1987).
Awarding punitive damages and attorney's fees under CUTPA is discretionary; General Statutes § 42-110g(a) and (d); see Bailey Employment System v. Hahn,545 F. Sup. 62, 73 (D.Conn. 1982) aff'd, 723 F.2d 895 [sic] (2d Cir. 1983); and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done. Sturman v. Sacha, 191 Conn. 1, 7,463 A.2d 527 (1983); Long v. Scull, 184 Conn. 252, 258,439 A.2d 975 (1981); Lamont v. New Hartford,4 Conn. App. 303, 307, 493 A.2d 298 (1985). "In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights.Collins v. New Canaan Water Co., 155 Conn. 477, 489,234 A.2d 825 (1967). . . .'
It is thus a well settled rule of Connecticut case law that CUTPA punitive damage awards are made at the discretion of the trial court. The remedy for a plaintiff who establishes liability under CUTPA is not limited to compensatory damages or common law punitive damages. Damages can be awarded even when there are other statutory remedies that plaintiff has access to. The existence of common law or other statutory remedies does not preclude recourse to CUTPA.Ivey, Barnum and O'Mara v. Indian Harbor Properties,Inc., 190 Conn. 528, 461 A.2d 1369 (1983). CT Page 12916
In addition, there is also no set formula or minimum or maximum amounts Connecticut courts must adhere to.Jones v. Ippoliti, 1995 WL 405697 (Conn.Super. 1995). CUTPA punitive damage awards have varied, depending upon the circumstances of the case from: none at all, SirSpeedy, Inc. v. LP Graphics, Inc., 957 F.2d 1033 (1992) (where a court found that the defendant's conduct did not meet the requisite standard), to 25% of compensatory damages, Jones, supra at 1, to an amount equal to actual damages, Staehle v. Michael's Garage, 35 Conn. App. 455, (1994), to double and even treble damages or a multiple of actual damages, Bailey Employment System, Inc. v.Hahn, 545 F. Sup. 62, 73 (D.Conn. 1982) aff'd,723 F.2d 895 (2d Cir. 1983), to one half of one percent of the defendant's net worth, United TechnologiesCorporation v. American Home Assurances Co.,118 F. Sup.2d 174 (2000).
In United Technologies, the court adopted the following factors used in BMW v. Gore, 517 U.S. 559,116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), in its determination that a CUTPA punitive damages award of $16 million dollars provided the desired deterrent effect. The United Technologies court followed the following factors: 1) the degree of reprehensibility of the defendant's conduct; 2) the disparity between the harm or potential harm suffered by plaintiff and the punitive damages awarded; 3) the difference between punitive damages awarded and civil penalties authorized by law or imposed in comparable cases; and, 4) the fact that the award represented one-half of one percent of defendant's net worth, a percentage range in which the Second Circuit has approved punitive damages awards.
In the instant case, plaintiff seeks both punitive damages and injunctive relief which is available under CUTPA. The defendant's offer of settlement includes neither of these. The defendant's reply brief argues that to allow plaintiffs to recover any more under CUTPA would render the Health Club Act meaningless, and that if the legislature intended for a plaintiff to be able to recover more than treble damages and attorney's fees for a Health Club Act violation, it would have provided for this remedy in the act itself. This argument ignores the fact that this is precisely what the legislature did in C.G.S. § 21-222 (b), which makes any violation of CT Page 12917 the Health Club Act a per se violation of CUTPA. Dismissal would deprive plaintiff access to CUTPA's remedies. If the plaintiff was precluded from seeking additional relief under CUTPA, it would be C.G.S. § 21-222 (b) that would be rendered meaningless. While plaintiff has no absolute right to either CUTPA punitive damages or injunctive relief, even if she prevails in the case, she does have the right to have a court decide whether such relief is warranted. She also has the right to have the court, and not the defendant, determine the amount, if any, of punitive damages. Therefore, on the basis that the settlement offer provides only partial relief, this court finds that it does not extinguish plaintiff's claims.
Claims of the Absent Class Members
Since the individual claims have been found to be live and not moot, the claims of absent class members are also non moot. But what if plaintiff's individual claims were moot? In Connecticut, are there any circumstances which apply here in which the class claims are survivable?
Because class action complaints involve situations which are particularly capable of repetition yet evading review, courts have developed rules and exceptions to the mootness doctrine which address both the representational duties of the plaintiff and the public interest value of the class action. Federal Rule 23 is designed to ensure that the rights of absent class members are not prejudiced by the voluntary actions of the plaintiff. The Connecticut class action rule also requires court approval of any withdrawal action due to a settlement and may require notice of such proposed dismissal, compromise or settlement to be given to absent members. See Practice Book § 9-9 and § 9-10.
According to one court, a mere offer of settlement, without acceptance, does not moot an action. Littledovev. JBC Associates, Inc., 2000 WL 33141223 (E.D.Cal.). In Littledove, the court noted:
 [t]he fact that defendants' offer was made pursuant to [Federal] Rule [of Civil Procedure] 68 does not compel a contrary result. Rule 68 allows a defending party to CT Page 12918 make an offer of judgment before trial, which remains valid for ten days. The Rule provides for certain consequences if a party does not accept the offer; dismissal of the action is not one of them. Specifically, if the offer is rejected and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Furthermore, under Rule 68, "an offer not accepted shall be deemed withdrawn."
Id at *2.
One exception to the mootness doctrine occurs when a class has already been certified. Once a motion for class certification is pending, a defendant cannot avoid a decision on a motion for class certification (or on appeal of denial of class certification) by making an offer of judgment to the named plaintiff. See H. Newberg, Newburg on ClassActions § 2.12 (3rd ed. 1992). Both parties agree that this exception does not apply to the instant case, because here, the offer was made before the motion for certification was filed. The issue in this case is whether or not an offer of judgment made before filing of the motion for class certification mandates dismissal of the case for mootness.
According to Newburg, supra, whether an action filed as a class complaint can survive mootness of the representative plaintiff's claims depends upon several factors, including whether the intervening events causing the mootness have individual or classwide impact and whether the mootness of the plaintiff's claims occurs before or after a class ruling or a judgment on the merits pending appeal. In most cases, when a court reaches a finding of non-mootness in the context of a challenge in a class action, the determination is based upon a continuing facet of the claims of the plaintiff which remains for adjudication. Deposit GuarantyNational Bank v. Roper, 45 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427
(1980).
An individual claim that is capable of repetition yet evading review provides another exception to the mootness doctrine. Some courts have permitted cases to continue even after the plaintiff's individual claims became moot. When mootness occurs before a class ruling, the named plaintiff has been allowed to serve as class representative, because the issues involved were of substantial public interest, Conover v.Montemuro, 477 F.2d 1073 (3rd Cir. 1971); or the controversy continues to affect class members, Jenkins v. United Gas Corp., 400 F.2d 28 (5th
Cir. 1968); Gatling v. Butler, 52 F.R.D. 389, 394 n. 7 (D.Conn. 1971). CT Page 12919
In addition, courts have responded to the mootness of the claims of the class representative either by substituting a new class representative or permitting the original plaintiff to continue representing the class. A plaintiff may be permitted to continue its representation of a class action involving issues capable of repetition yet evading review, even when the plaintiff is not affected by the recurrence. Sosna v. Iowa,419 U.S. 393, 96 S.Ct. 553, L.Ed.2d 532 (1975).
Citing United States Parole Comm'n v. Geraghty 445 U.S. 388, 402,100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), plaintiff argues that even when a proposed plaintiff's individual claims are extinguished, dismissal is not warranted on the basis of mootness.
 The fact that a named plaintiff's substantive claims are mooted due to an occurrence other than a judgment on the merits does not mean that all the other issues in the case are mooted. A plaintiff who brings a class action presents two separate issues for judicial resolution. One is the claim on the merits; the other is the claim that he is entitled to represent the class.
The court held that the proposed class representative retains a personal stake in the class obtaining certification. Id at 404. Defendant argues that Geraghty is inapposite to the instant case, because in Geraghty a class action had been filed and denied and here the offer of judgment came before the filing of a motion for class certification. The court further noted
 Although one might argue that Sosna contains an implication that the crucial factor for Article III purposes is the timing of class certification, other cases, applying a "relation back" approach, clearly demonstrate that timing is not crucial. When the claim on the merits is "capable of repetition yet evading review," the named plaintiff may litigate the class certification issue despite loss of his personal stake in the outcome of the litigation.
Geraghty, at 398.
But the defendant argues that the timing of a filing for a motion for certification is crucial. Relying on Holstein v. City of Chicago,
729 F.3d 1145 (7th Cir. 1994), CCFC argues that if a tender offer is made before a motion for class certification is filed, a plaintiff cannot CT Page 12920 avail himself of any exception to the mootness doctrine. Holstein is distinguishable from the instant case, however. Seeking to recover fees incurred from alleged illegal towing as well as a declaratory judgment that Chicago's post-tow hearing procedures were unconstitutional, the twoHolstein plaintiffs filed a federal class action. In violation of a municipal ordinance, plaintiff Holstein's car was parked in front of a cross walk, while plaintiff Grove had parked legally near a ballpark. The city admitted that the class representative Grove's tows were improper. Offers of judgment were made to both plaintiffs and the court ruled that they would satisfy plaintiffs' entire demands and dismissed the case.
In Holstein, parties were offered complete, not partial relief Further, in Holstein plaintiff Grove could not make the requisite showing that his claim was capable of repetition, yet evading review. The reason plaintiff Grove could not show a "demonstrable probability" that the same controversy would recur or that his claim was capable of repetition yet evading review is that the city had admitted he had been improperly towed from a place where he had been legally parked. Why would they then tow him from a legal parking space a second time? Here, the circumstances are different. Plaintiffs might indeed require the services of a health club in the future (as might reasonable occur if exercise is prescribed for medical reasons) and could reasonably make the requisite showing that there is a "demonstrable probability" that the same controversy could recur.
Other cases offered by defendant do not require a different analysis. Defendant also cites Greisz v. Household Bank 176 F.3d 1012 (1999) which follows Holstein. But in Greisz the principal reason that the district court denied class certification and dismissed the suit was not the timing of the motion for certification but, "the proved incapacity of the lawyer for the class . . . to litigate a class action." Greisz, supra at 1013. The court further noted that
 Mr ____'s (name of the lawyer omitted) extensive but inept and wholly unsuccessful efforts to conduct class actions have drawn unusually pointed criticisms from Illinois state judges. In one case the judge called the complaint drafted by (which had already been amended four times) the "lousiest complaint I've ever read in twenty years on the bench' and added that "I wouldn't want to be in a class action where you were representing the plaintiff.' _____ has several times sought to file Truth in Lending class actions with his own relatives as the named plaintiffs, which is of course improper e. g. Susman v. Lincoln American Corp., 561 F.2d 86, 95 (7th Cir. 1997); Turoff v.CT Page 12921 May Co., 531 F.2d 1357, 1360 (6th Cir. 1976) (per curiam). . . . Since the offer did not provide complete relief (or for that matter any) relief with regard to those other claims, it was not, in fact, an offer to settle Greisz's entire case against the bank; and so the judge erred in thinking that the rejection of the offer required him to dismiss the suit without reaching the merits of the one claim that may have had some merit. But _____ does not argue this point (of course), and it is therefore waived.
Id at 1013.
Defendant also relies on other cases in which plaintiffs were offered complete relief prior to the filing of motion for class certification:Ambalu v. Rosenblatt, 194 F.R.D. 451 (E.D.N.Y. 2000); Labora v. MCI, WL 1572719 (S.D.Fla. 1998) and Wiskur v. Short Term Loans,94 F. Sup.2d 937, 939 (N.D.Ill. 2000). In Wiskur the plaintiff was not only offered complete relief of her federal claims prior to the filing of a motion for class certification, but when extended time was granted to permit the amendment of the complaint, the court's orders were not followed and the motion for certification was actually withdrawn. Id.
Defendant further alleges that Hennessey cannot take advantage of the class action exception to the mootness doctrine because she failed to move diligently for class certification. He relies on a series of federal cases for the proposition that a motion for certification must be filed within 60-90 days of the filing of a class action complaint. Rones andCoggins v. National Association for the Advancement of Colored People,170 F.R.D. 80 (D.D.C. 1977); Weiss v. International Brotherhood ofElectrical Workers, 729 F. Sup. 144, 148 (D.D.C. 1990) and Batson v.Powell, 912 F. Sup. 565 (D.D.C. 1996). These courts all strictly enforced Local Rule 203(b) of the United States District Court for the District of Columbia, which requires that a motion for class certification be filed within 90 days after the filing of a class action complaint.
But not all federal courts agree with the District of Columbia District Court that the timing of a motion for class certification can be fatal to the action. In Woodard v. Online Information Services, 191 F.R.D. 502
(E.D.N.C. 2000), the court refused to dismiss a case where the defendant had attempted to pick-off the named plaintiff. In Woodward, the plaintiff filed a class action complaint alleging that the defendant's debt collection letters violated the Fair Debt Collection Practices Act. Before the plaintiff moved for class certification, the defendant changed its collection letter to conform to the law and offered to pay the CT Page 12922 plaintiff the maximum judgment allowed under the law, plus costs and attorney's fees. Several weeks later the plaintiff filed his motion for class certification. The court denied the motion to dismiss and granted certification, holding:
 Defendant has filed a Motion to Dismiss, arguing that its offer to settle with the Plaintiff for the maximum award allowable under the FDCPA warrants dismissal on the grounds that no case or controversy exists and therefore this Court lacks subject matter jurisdiction. This Court cannot dismiss a potential class action claim based on Defendant's offer to settle the individual claim of the named Plaintiff Furthermore, Defendant's motion is mooted by this Court's decision to grant class certification.
Id at 508 (internal citation omitted).
Another court has held that from the time a class action is filed until a final determination is made, the action should be treated as if the class existed for purposes of mootness. German v. Federal Home LoanMortg. Corp., 885 F. Sup. 537 (S.D.N.Y. 1995), decision clarified on reargument, 896 F. Sup. 1385, reconsideration denied. Thus, unnamed members of the class are provided an opportunity to intervene and to pursue their claims.
Pursuant to Federal Rule of Civil Procedure 23(c)(1), a motion for class certification and a class certification determination should be made "as soon as practicable after the commencement of an action."
CUTPA § 42-110h also provides:
 CLASS ACTIONS. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subsection may be conditional, and it may be amended before decision on the merits. An order issued under this section shall be immediately appealable by either party.
According to Newburgh, the potential for avoiding mootness after the named plaintiff's claims become moot comes from the filing of the original complaint as a class action. See Newburg, supra, § 2.24, page 2-102. The timing of certification hearings may involve factors not in the control of the named plaintiff, Cruz v. Hauck, 627 F.2d 710 (5th
Cir. 1980) and mootness of class claims should not turn on an arbitrary CT Page 12923 administrative procedure.
Finally, the United States District Court for the District of Columbia's Local Rule 203(b) has no counterpart in Connecticut. Under Connecticut law there is no specific time limit for filing a motion for class certification as long as the plaintiff is diligent in his pursuit of class certification and the motion is ruled upon as soon as is practicable. See Practice Book. Further, there is no evidence to support defendant's allegation that plaintiff was not diligent in his pursuit of class certification. In fact, it was defendant who moved for a delay in class certification on May 14, 2001. At a status conference held to discuss the matter, both parties sought the advice of the judge as to which motions should be dealt with first and there was mutual agreement that the motion for class certification should await a decision on the motion to strike and the motion to dismiss.
This court agrees with the Roper court in its distaste for offensive tactics for the terminating of class action suits by enticing individual plaintiffs to settle their claims at the expense of the class, when theRoper court noted that permitting defendants to rid themselves of a class action suit
 simply because the defendant has sought to "buy off' the individual private claims of named plaintiffs would be contrary to sound judicial administration. Requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of the class; moreover, it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.
Roper, supra at 339.
The CUTPA claims for equitable relief, namely a modification of an allegedly illegal standard form contract to comply with the law of the Health Club Act and to enjoin defendants from collecting payment from a bank account or credit card from all members of the class whose initial contract duration has expired and who have not renewed their contracts in writing, are matters of public concern. Even if this court had ruled that Hennessey's individual claim was moot, plaintiff's claims are capable of repetition yet evading review and, as such, bring Hennessey under the mantle of the class action mootness exception doctrine. Therefore, this court finds that the offer of judgment failed to provide complete relief CT Page 12924 and did not moot Hennessey's claim. The court finds further, that, even if Hennessey's individual claim was moot, there are class claims which survive and thus neither warrant nor permit dismissal of this case. The motion to dismiss is hereby denied.
By the court,
Aurigemma, J.